UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MEDICAL SOLUTIONS, INC.,

Plaintiff,

vs.

C CHANGE SURGICAL LLC,

Defendant.

Civil Action No. 1:06-cv-01261-PLF

**DEFENDANT'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION**

NOW COMES Defendant C Change Surgical LLC ("C Change"), by and through counsel, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and hereby moves the Court for an Order dismissing this action on the ground that this Court lacks personal jurisdiction. In support of this Motion, C Change states that, because it lacks substantial, continuous and systematic contacts with the District of Columbia, it should not be subject to general personal jurisdiction in this forum. Moreover, C Change has engaged in no activity in the District of Columbia such that it would be subject to specific personal jurisdiction under the District's long-arm statute, D.C. Code § 13-423(a), and the exercise of personal jurisdiction over C Change would not comport with due process. Defendant C Change has not purposefully directed its activities at the residents of the District of Columbia, the claims asserted by Plaintiff Medical Solutions, Inc. do not arise out of or relate to C Change's contact with the District, and the exercise of jurisdiction over C Change would be unreasonable and unfair. Defendant C Change is, therefore, entitled to an Order dismissing this action for lack of personal jurisdiction.

In further support of this motion, C Change respectfully relies on the Declaration of Patrick Kammer in Support of Motion to Dismiss and the Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss filed herewith.

This the <u>18th</u> day of September 2006.

    <u>/s/ Constance K. Robinson</u>
Constance K. Robinson
D.C. Bar No. 244806
KILPATRICK STOCKTON LLP
607 14th Street, NW
Suite 900
Washington, DC  20005-2018
Telephone:  (202) 508-5822
Facsimile:  (202) 585-0002
Email:  crobinson@kilpatrickstockton.com

Steven Gardner  (*pro hac vice* application pending)
N.C. State Bar No. 20984
Email: sgardner@kilpatrickstockton.com
Tonya R. Deem (*pro hac vice* application pending)
N.C. State Bar No. 23075
Email:  tdeem@kilpatrickstockton.com
Jon R. Pierce (*pro hac vice* application pending)
Texas State Bar No. 24046631
Email:  jpierce@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101-2400
Telephone:  (336) 607-7300
Facsimile:  (336) 607-7500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MEDICAL SOLUTIONS, INC.,

Plaintiff,

vs.

C CHANGE SURGICAL LLC,

Defendant.

Civil Action No. 1:06-cv-01261-PLF

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant C Change Surgical LLC ("C Change") respectfully submits this brief in support of its Motion to Dismiss For Lack of Personal Jurisdiction.

**MATTER BEFORE THE COURT**

C Change is a two-year-old North Carolina limited liability company with its only place of business in Winston-Salem, North Carolina. (Decl. of Patrick Kammer in Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction [hereinafter Kammer Decl.] ¶ 2.)[1] Plaintiff Medical Solutions, Inc. ("MSI") filed this action in the United States District Court for the District of Columbia, alleging that C Change is infringing two of its patents[2] in manufacturing, using, offering to sell or selling equipment that controls heating of medical fluids and related equipment. (Compl. ¶¶ 13-15.) C Change's <u>only</u> contact with the District of Columbia was its participation in an industry trade show in March 2006. (Kammer Decl.

---

[1] A copy of Mr. Kammer's declaration is attached hereto as Exhibit 1.
[2] U.S. Patent Nos. 6,259,067 (the "'067 Patent") and 6,384,380 (the "'380 Patent"), issued on July 10, 2001, and May 7, 2002, respectively (the patents are collectively referred to as the "Patents in Suit"). (Compl. ¶¶ 9-10.)

3

¶ 8.)  C Change's contact with the District of Columbia is insufficient to establish either general jurisdiction or specific jurisdiction.  Accordingly, Defendant C Change respectfully moves this Court to dismiss this action for lack of personal jurisdiction.

## STATEMENT OF THE FACTS

C Change is in the business of developing and commercializing technologies to improve operating room efficiency and patient safety.  (Kammer Decl. ¶ 3.)  The only product developed by C Change to date is IntraTemp™, a mobile workspace that controls the temperature of surgical fluids.  (Id.)

C Change is a North Carolina limited liability company with its principal and only place of business in Winston-Salem, North Carolina.  (Id. ¶ 2.)  C Change is not registered to do business in the District of Columbia.  (Id. ¶ 4.)  It has no sales agents, employees, offices, manufacturing facilities, bank accounts, telephones or telephone listings there.  (Id.)   It has not acquired ownership, possession or control of an asset or thing of value in the District.  (Id.)  It has not made, used, offered for sale, or sold any products there.  (Id.)  While C Change's website is accessible from the District of Columbia, the website does not include interactive features and is not specifically targeted to residents of the District.  (Id.)  C Change has participated in no sales calls within the District of Columbia, has directed no mass mailings or general marketing efforts at the District, and has generated no revenue from the District.  (Id. ¶ 5.)  In fact, C Change's only contact with the District of Columbia was its participation as one of approximately 600 exhibitors at the annual Association of periOperative Registered Nurses ("AORN") trade show, which happened to be held in Washington, D.C., on March 19-23, 2006.  (Id. ¶ 8.)

4

At the AORN trade show, C Change rented a booth in which it displayed the IntraTemp™ and had available a brochure describing the IntraTemp™. (<u>Id.</u> ¶ 9, Ex. A.) C Change participated in the trade show to promote C Change to potential marketing partners, acquirers and/or investors and to receive feedback on IntraTemp™. (<u>Id.</u> ¶ 10.) C Change did not attend the trade show to sell IntraTemp™ units, to negotiate sales or to take orders; moreover, C Change did not sell any units, negotiate sales or take orders at the show. (<u>Id.</u>) In fact, the units displayed were prototypes and not ready for commercial release. Finally, C Change did not have available at the trade show and did not provide any pricing information or price quotes on the units. (<u>Id.</u>)

Out of the approximately 6,800 total conference attendees, only approximately 100 visited C Change's booth and left their contact information. (<u>Id.</u> ¶ 11.)  <u>None</u> of these attendees were from Washington, D.C. (<u>Id.</u> ¶ 12.)

On September 15, 2006, C Change filed a complaint for declaratory judgment in the United States District Court for the Middle District of North Carolina, seeking a declaration that the Patents in Suit and the claims thereof are invalid and unenforceable and that C Change has not infringed the Patents in Suit (the "Declaratory Judgment Action").[3]  Given its lack of minimum contacts with the District of Columbia and the pending Declaratory Judgment Action, C Change respectfully moves this Court for an order dismissing this action for lack of personal jurisdiction.

---

[3] A copy of the complaint filed in the Declaratory Judgment Action is attached hereto as Exhibit 2.

US2000 9488263.1 55362-317991

## ISSUES

I.    **Does C Change Have Sufficient "Substantial and Continuous" Contacts With the District of Columbia to Justify the Exercise of General Jurisdiction, Since It Does Not Do Business in the District, Owns No Property in the District, Has No Agent in the District, Directs No Marketing to the District and Since Its Only Contact with the District Was Its Attendance at One Trade Show?**

II.   **Does Specific Jurisdiction Exist Over C Change Where It Has Not Purposefully Directed Its Activities at the Residents of the District of Columbia and Plaintiff MSI's Claims Are Unrelated to and Do Not Arise Out of C Change's Attenuated Contact with the District?**

## ARGUMENT

### A.    Legal Standard.

Determining whether personal jurisdiction exists over a non-resident defendant involves two inquiries:  whether personal jurisdiction exists under the forum's long-arm statute and, if so, whether the exercise of personal jurisdiction comports with due process. Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1279 (Fed. Cir. 2005). If the forum's long-arm statute is coextensive with the limits of due process, "the two inquires collapse into a single inquiry:  whether jurisdiction comports with due process." Dainippon Screen Mfg. Co. v. CFMT, Inc., 142 F.3d 1266, 1270 (Fed. Cir. 1998).  While Federal Circuit precedent controls the due process analysis, the law of the forum governs the interpretation of the forum's long-arm statute.  HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1307 (Fed. Cir. 1999); 3d Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998) ("While we defer to the interpretation of a state's long-arm statute given by that state's highest court, particularly whether or not the statute is intended to reach the limit of federal due process, when analyzing personal jurisdiction for purposes of compliance with federal

6

due process, Federal Circuit law, rather than regional circuit law applies.") (internal citations omitted).

Due process concerns mandate that a court may only exercise personal jurisdiction over a non-resident defendant where that defendant "has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (internal citations and quotations omitted). This is because the defendant has a liberty interest in not being subject to the judgments of a forum with which it has no meaningful minimum "contacts, ties or relations" and, out of fairness, defendants should not be "haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72, 475 (1985) (internal quotations omitted). Personal jurisdiction may be either general or specific. See Helicopteros, 466 U.S. at 414, n. 9.

In reviewing a motion to dismiss, a court must assume the truth of all factual allegations made in the complaint and construe all inferences from them in the light most favorable to the plaintiff. Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003); U.S. v. Smithfield Foods, Inc., 332 F. Supp. 2d 55, 59 (D.D.C. 2004). At the same time, however, jurisdiction may not be invoked solely on "bare allegations or conclusory statements." Smithfield Foods, 332 F. Supp. at 60. When personal jurisdiction is challenged, the plaintiff must "allege specific facts connecting [the] defendant with the forum." Id.

7

As demonstrated below, Defendant C Change's contacts with the District of Columbia are insufficient to establish either general jurisdiction or specific jurisdiction. Accordingly, Plaintiff's Complaint should be dismissed.

**B.    C Change Does Not Have Sufficient "Substantial and Continuous" Contacts With the District of Columbia to Justify the Exercise of General Jurisdiction, Where It Does Not Do Business in the District, Owns No Property in the District, Has No Agent in the District, Directs No Marketing to the District and Its Only Contact with the District Was Attendance at One Trade Show.**

"District of Columbia law . . . permits courts to exercise 'general jurisdiction' over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation is 'doing business' in the District" and "its business contacts are 'continuous and systematic.'"   Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 509-10 (D.C. Cir. 2002) (citations omitted); see also Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1279-80 (Fed. Cir. 2005) (applying D.C. law); D.C. Code § 13-334(a) (2001). The reach of general jurisdiction in the District of Columbia under D.C. Code § 13-334(a) is coextensive with the due process clause.   Gorman, 293 F.3d at 510; Trintec, 395 F.3d at 1279-80.  Therefore, the analysis of general jurisdiction is one of federal due process.

In determining whether a defendant has "continuous and systematic" contacts with the forum, a court will consider factors such as whether the defendant maintains an office in the forum, has been licensed to conduct business in the forum, has employees or agents in the forum, uses bank accounts in the forum, or markets or sells products in the forum.  See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984) (holding there was no general jurisdiction where defendant did not have a place of business in the forum, was not licensed to do business in the forum and its only contacts consisted of sending an

8

officer to the forum for a contract-negotiation session, accepting checks drawn on a bank in the forum, purchasing products and services from the forum, and sending personnel to the forum for training). None of these factors are present in this case.

C Change is not registered to do business in the District of Columbia and has no sales agents, employees, offices, manufacturing facilities, bank accounts, telephones or telephone listings there.  (Kammer Decl. ¶ 4.)  Furthermore, C Change has not made, used, offered for sale or sold any products in the District and has participated in no sales calls within the District.  (Id. ¶¶ 4, 5, 7.)  C Change also has directed no marketing efforts at the District and has generated no revenue from the District.  (Id. ¶ 5.)

The only contact C Change has had with the District of Columbia is its participation in the AORN Congress in March 2006.  (Id. ¶ 8.)  One visit to a forum to attend a trade show does not constitute "continuous and systematic" contact.  See, e.g., Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1490 (9th Cir. 1993) (rejecting argument that a nonresident's attendance at "five medical conferences in [the forum] over the last four years" constituted "systematic and continuous contacts with" the forum); NorthPole US, LLC v. Price, No. 4:06CV0148 TCM, 2006 WL 1520641, at *3 (E.D. Mo. May 31, 2006) (holding that a single "visit to the [forum] in 2004 to exhibit a tent and solicit [an] agreement to market the tent" was "not the 'continuous and systematic' contact required for general jurisdiction.");[4] Portrait Displays, Inc. v. Speece, No. C-04-1501 RMW, 2004 WL 1964506, at *5 (N.D. Cal. Sept. 3, 2004) (stating that the "attendance and marketing of . . . products at a single

---

[4]  A copy of NorthPole is attached hereto as Exhibit 3 for the Court's convenience.

9

conference in [the forum] does not show systematic and continuous . . . activity").[5]  Thus,

this Court does not have general jurisdiction over C Change.

> **C.**  **The Exercise of Specific Jurisdiction Over C Change Would Not Comport With Due Process Given That C Change Has Not Purposefully Directed Its Activities at the Residents of the District of Columbia and Plaintiff MSI's Claims Are Unrelated to and Do Not Arise Out of C Change's Attenuated Contact with the District.**

MSI's only allegation regarding the bases for asserting personal jurisdiction over

Defendant C Change is the allegation that C Change "marketed" the alleged infringing

product "within the jurisdiction of this Court."  (Compl. ¶ 6.)  The potentially relevant

provisions of the District of Columbia long-arm statute provide:

> (a)  A District of Columbia court may exercise personal jurisdiction over a person . . . as to a claim for relief arising from the person's –
>
> > (1)  transacting any business in the District of Columbia;
> >
> > . . . or . . .
> >
> > (3)  causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; . . . .

D.C. Code § 13-423(a) (2001).[6]

Section 13-423(a)(1) has been held to be coextensive with the due process clause.

Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004).  Therefore, the analysis of

whether personal jurisdiction may be asserted over C Change pursuant to section 13-

423(a)(1) collapses into the due process analysis.  See discussion infra pp. 9-18 .

---

[5]  A copy of Portrait Displays is attached hereto as Exhibit 4 for the Court's convenience.

[6]  D.C. Code § 13-423(a)(4), allowing the assertion of jurisdiction if the defendant causes injury in the District of Columbia by an act or omission outside of the District and if it "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from . . . the District of Columbia," does not apply to this case.  As Mr. Kammer explains in his declaration, C Change has generated no revenue from the District of Columbia and its only contact with the District is its attendance at one trade show.  (Kammer Decl. ¶¶ 5, 8, 17.)  See Burman v. Phoenix Worldwide Indus., 437 F. Supp. 2d 142, 153 (D.D.C. 2006) (holding that sending employees to continuing education programs, seminars and conferences in the District did not satisfy section 13-423(a)(4) where there was "no evidence that these excursions . . . are regular in nature or otherwise exemplify a persistent course of conduct.")

US2000 9488263.1 55362-317991

Section 13-423(a)(3), however, has been deemed "a precise and intentionally restrictive tort section which stops short of the outer limits of due process, and [which] requires that both act and injury occur in the District of Columbia. Helmer, 393 F.3d at 208; see also Burman v. Phoenix Worldwide Indus., 437 F. Supp. 2d 142, 152 (D. D.C. 2006). Therefore, to assert personal jurisdiction over C Change pursuant to section 13-423(a)(3), Plaintiff MSI must establish not only that the exercise of jurisdiction complies with due process, but that C Change committed an infringing act while in the District of Columbia.[7] See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1280 (Fed. Cir. 2005). Given that C Change's only contact with the District is its attendance at the AORN trade show (Kammer Decl. ¶ 8), during which it engaged in no infringing activity, see infra section C.2, C Change has not committed any act within the scope of section 13-423(a)(3). Moreover, even if C Change did come within the reach of the long-arm statute, the exercise of jurisdiction would not satisfy due process requirements. See Trintec, 395 F.3d at 1283 ("If the [trial] court rules [on remand] that it has personal jurisdiction under the District of Columbia long-arm or service of process statute, it will then have to address whether such jurisdiction would be consistent with due process . . . .")

The Federal Circuit has developed a three-prong test to determine whether the exercise of specific jurisdiction over a nonresident comports with due process:

(1)    whether the defendant purposefully directed its activities at the residents of the forum;

(2)    whether the claim arises out of or is related to those activities, and

(3)    whether assertion of personal jurisdiction is reasonable and fair.

---

[7] Under 35 U.S.C. § 271(a), in infringer is someone who without authority "makes, uses, offers to sell, or sells any patented invention."

US2000 9488263.1 55362-317991

Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995); HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1307-08 (Fed. Cir. 1999). The plaintiff must prove all three prongs to establish jurisdiction. Akro, 45 F.3d at 1545. None of the three prongs are satisfied in this case.

### 1.    C Change Has Not "Purposefully Directed" Its Activities at the Residents of the District of Columbia.

The Supreme Court holds that "the constitutional touchstone" of the due process inquiry is whether a "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."[8] Burger King Corp. v. Rudzewicz, 471 U.S. 462, 4714 (1985) (internal quotations omitted). For example, in 3D Systems, Inc. v. Aarotech Labs., Inc., the Federal Circuit found that the nonresident defendant's acts of "sen[ding] promotional letters, solicit[ing] orders for models, sen[ding] videos and sample parts, and issu[ing] price quotations to residents of" California constituted activity that was purposefully directed at the residents of California such that the defendant should anticipate being haled into court in California. 160 F.3d 1373, 1378 (Fed. Cir. 1998).

C Change has engaged in no activities in the District of Columbia such that it could "reasonably anticipate being haled into court there." C Change's only contact with the District of Columbia is its participation as an exhibitor at the AORN Congress, a national trade show attended by thousands of industry professionals from across the country.[9] (Kammer Decl. ¶¶ 8, 12.) The chance fact that C Change attended one trade show that

---

[8] The Supreme Court has stated that one rationale for this requirement is that "[a] State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 473 (emphasis added and internal quotations omitted). MSI, however, is not a District of Columbia resident and, thus, this rationale does not apply.

[9] In fact, of the approximately one hundred attendees who visited C Change's booth and left their contact information, not one was from the District of Columbia. (Kammer Decl. ¶ 12.)

US2000 9488263.1 55362-317991

happened to be held in the District of Columbia does not establish that C Change "purposefully directed" its activities at the residents of the District.

Two cases from the Northern District of Illinois are directly on point.  First, in <u>Black & Decker, Inc. v. Shanghai Xing Te Hao Industrial Co.</u>, No 02C4615, 2003 WL 21383325 (N.D. Ill. June 12, 2003),[10] the plaintiff brought suit in the Northern District of Illinois against the defendant Chinese corporation for patent infringement.  Plaintiff Black & Decker asserted that the court had personal jurisdiction over the defendant because the defendant attended two trade conferences in Chicago and exhibited the accused product at one of the shows.  <u>Id.</u> at*2.  However, there was no evidence of any sales, uses or offers to sell the accused product in Illinois.  <u>Id.</u> at *3.  Rejecting the plaintiff's assertion of personal jurisdiction, the court held that mere attendance at a trade show does not constitute purposefully directing activities and is, therefore, insufficient to establish personal jurisdiction.  <u>Id.</u>

Second, in <u>Fluid Management Ltd. Partnership v. H.E.R.O. Industries, Ltd.</u>, No. 95C5604, 1997 WL 112839, at *6 (N.D. Ill. Mar. 11, 1997),[11] the defendant's "contacts with Illinois [arose] from their display and arguable demonstration of their products at the . . . trade show, which happened to be held in Chicago, and their presumable attempt to market their products, including the [alleged infringing product], to several Illinois customers who were planning to attend and/or, did attend, the trade show."  <u>Id.</u>  The court held that these contacts were insufficient, stating "[c]onsidering the nature and quality of" the defendants' acts, they did not "purposefully avail[] themselves of the privilege of conducting business

---

[10]  A copy of <u>Black & Decker</u> is attached hereto as Exhibit 5 for the Court's convenience.
[11]  A copy of <u>Fluid Management</u> is attached hereto as Exhibit 6 for the Court's convenience.

US2000 9488263.1 55362-317991

within Illinois such that they should have reasonably anticipated that they might be haled into court in Illinois." Id.  Other cases are directly on point and agree.  See, e.g., Euro-Pro Operating LLC v. Scutte, No. Civ.A. 05-11946-DPW, 2006 WL 239802, at *3 (D. Mass. Jan. 31, 2006) (holding that attendance at three or four national sales conferences was merely isolated and fortuitous conduct, and not evidence of purposeful availment);[12] Geodetic Servs., Inc. v. Metronor AS, No. 6:98CV1416ORL19A, 2000 WL 1027222, at *5 (M.D. Fla. Feb. 9, 2000) (holding "the facts do not support a finding that [defendant] purposefully directed its sales efforts to Florida by attending a single trade conference that was held, fortuitously, in Florida.").[13]

Given that C Change's only contact with the District of Columbia is its attendance at a national trade show which happened to be held in Washington, D.C., C Change has not "purposefully directed its activities at the residents of" the District such that it could reasonably anticipate being haled into court there.  Like the suits against the defendants in Black & Decker, Fluid Management, Euro-Pro, Geodectic and similar cases, this suit should be dismissed for lack of personal jurisdiction.

**2.    MSI's Claims for Patent Infringement Do Not Arise Out Of or Relate to C Change's Forum Activities.**

The second prong of the Federal Circuit's test for specific jurisdiction requires that the claims asserted against the defendant arise out of or relate to the acts that the defendant "purposefully directed" at the forum.  Plaintiff's claims that C Change infringed its patents by manufacturing, using, offering to sell and/or selling equipment that controls heating of medical fluids and related equipment (Compl. ¶¶ 13-15) do not arise out of or relate to C

---

[12]  A copy of Euro-Pro is attached hereto as Exhibit 7 for the Court's convenience.
[13]  A copy of Geodetic is attached hereto as Exhibit 8 for the Court's convenience.

Change's activity in the District of Columbia. First, the IntraTemp™ product is manufactured in North Carolina—not in the District of Columbia. (Kammer Decl. ¶ 6.) Second, no IntraTemp™ has ever been sold or distributed to any resident of the District of Columbia. (Id. ¶ 7.) Third, as shown below, C Change's display of the IntraTemp™ at the AORN trade show does not constitute either an "offer to sell" or a "use" under 35 U.S.C. § 271(a). See Fluid Mgmt. Ltd v. H.E.R.O. Indus., No. 95C5604, 1997 WL 112839, at *4 (N.D. Ill. Mar. 11, 1997) ("Courts have held that 'the mere demonstration or display of an accused product, even in an obviously commercial atmosphere' is not an act of infringement within the ambit of § 271(a).")

> **a.    Display of IntraTemp™ at the AORN Tradeshow Does Not Constitute an "Offer To Sell."**

Under 35 U.S.C. § 271(a), in infringer is someone who without authority "makes, uses, offers to sell, or sells any patented invention." The Federal Circuit has defined liability for an "offer to sell" under section 271(a) "according to the norms of traditional contractual analysis." Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1254-55 (Fed. Cir. 2000). That is, to offer to sell, versus merely soliciting or advertising, the defendant must communicate a "'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" Id. at 1257 (holding there was no offer to sell where the offering parties met nine times about supplying the products, priced the products, and prepared a written offer, but never communicated with a third party) (quoting Restatement (Second) of Contracts § 24 (1979)). See also HollyAnne, 199 F.3d at 1308-09 (noting "[n]either price, nor quantity, nor delivery dates were discussed . . . .") For example, bids to supply a product specified in a request for

proposal and letters containing price quotations and a description of the goods may constitute "offers to sell."  See, e.g., FieldTurf Int'l., Inc. v. Sprinturf, Inc., 433 F.3d 1366, 1369-70 (Fed. Cir. 2006) (involving bids); 3D Sys., 160 F.3d at 1379 (involving price quotation letters).  On the other hand, communications which contain a description of the allegedly infringing products but which do not contain any price terms can not be construed as an "offer to sell" since they cannot be made into a binding contract by simple acceptance. MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1376 (Fed. Cir. 2005).

For example, in MEMC Electronic, the Federal Circuit affirmed the entry of summary judgment of no direct infringement, finding that there was no "offer to sell" the accused product in the United States.  Id. at 1376.  In that case, the plaintiff relied on emails transmitted by the defendant containing a description of the allegedly infringing product but no price terms.  Id.  Plaintiff argued that the emails contained an implicit price term—one that had been previously agreed upon.  Id.  The court rejected that argument, holding that, because the emails did not include on their face or incorporate therein any price terms, they could not be construed as an "offer" which could be made into a binding contract by simple acceptance.  Id.

In Fluid Management, the Northern District of Illinois examined the issue of whether demonstration of an allegedly infringing product at a trade show in Illinois, coupled with prior solicitation in Illinois, amounted to an act of infringement under section 271(a) such that the defendant would be subject to personal jurisdiction in Illinois.  No. 95C5604, 1997 WL 112839, at *3 (N.D. Ill. Mar. 11, 1997).  In that case, prior to the trade show, the defendant Fast America, Inc. wrote to a number of prospective Illinois attendees and invited

16

them to visit them at the show "so that we can demonstrate our products and discuss how Fast America, Inc. can best serve your . . . needs." Id. at *2.  During the trade show, Fast America demonstrated the accused product and then, after the show, followed up with attendees by sending them letters and forwarding brochures.  Id.  The court held that, based on "the totality of the circumstances," the defendant's actions did not constitute an act of infringement under section 271(a) and, thus, the court lacked personal jurisdiction.  Id. at *4-5.

C Change's activities in the District of Columbia are even more attenuated than those of the defendant in Fluid Management.  As explained in the Declaration of Mr. Kammer, C Change has participated in no sales calls within the District, has directed no marketing efforts at the District (Kammer Decl. ¶ 5) and, following the AORN trade show, did not follow-up with any of the trade show attendees (id. ¶ 13).  In fact, C Change's primary purposes in participating in the trade show was to promote C Change to potential marketing partners, acquirers and/or investors and to receive feedback on IntraTemp™.  (Id. ¶ 10.)  C Change did not attend the conference to sell the IntraTemp™ product, to negotiate sales or to take orders, and did not negotiate any sales or take any orders at the trade show.  (Id.)  Moreover, no sales resulted from the show.[14]  In fact, the units displayed at the trade show were prototypes not ready for commercial release, and C Change did not have available and did not provide any pricing information or price quotes on the product.  (Id. ¶ 10.)  Even the brochure describing the IntraTemp™ did not include pricing information.  (Id. Ex. A).  In the

---

[14]  The only sale to date of the IntraTemp™ was to The Memorial Hospital of Easton in Easton, Maryland ("The Memorial Hospital").  (Id. ¶ 17.)  This sale was the result of a representative of The Memorial Hospital (who had not seen C Change's display at the AORN trade show) hearing about the product from a friend, conducting her own research of the product on-line through C Change's website and contacting C Change directly to discuss the product and participating in a clinical trial.  (Id. ¶ 15.)

US2000 9488263.1 55362-317991

absence of any discussion or communication of sale terms, such as price, quantity or delivery dates, the mere display of the IntraTemp™ at the AORN trade show cannot be construed as an "offer to sell" under 35 U.S.C. § 271(a).  Consequently, MSI's claim that C Change infringed its patents by "offering to sell" the IntraTemp™ does not arise out of or relate to C Change's activities in the District of Columbia.

> **b.    Display of IntraTemp™ at the AORN Trade Show Does Not Constitute an Infringing "Use."**

Infringement under section 271(a) also occurs whenever anyone without authority "uses" any patented invention.  While "use" is interpreted broadly, see <u>NTP, Inc. v. Research In Motion, Ltd.</u>, 418 F.3d 1282, 1317 (Fed. Cir. 2005), the Federal Circuit has never directly considered the issue of whether merely displaying an allegedly infringing product at a trade show is an infringing "use."  Nevertheless, some lower courts have—and have held that it does not.  <u>See</u> <u>Fluid Mgmt. Ltd. P'ship v. H.E.R.O. Indus., Ltd.</u>, No. 95C5604, 1997 WL 112839, at *4 (N.D. Ill. Mar. 11, 1997) (holding that display of accused product at a trade show does not constitute an infringing use); <u>Intermedics, Inc. v. Ventritex, Inc.</u>, 775 F. Supp. 1269, 1286 (N.D. Cal. 1991) (holding "that the mere demonstration or display of an accused product, even in an obviously commercial atmosphere, does not constitute an infringing use under § 271(a)"), <u>aff'd</u>, 991 F.2d 808 (Fed. Cir. 1993); <u>Brennan v. Mr. Hanger, Inc.</u>, 479 F. Supp. 1215, 1231 (S.D.N.Y. 1979) (holding that the display of the alleged infringing product at a trade show did not constitute an infringing "use"); <u>see also</u> <u>Van Well Nursery, Inc. v. Mony Life Ins. Co.</u>, 362 F. Supp. 2d 1223, 1228 (E.D. Wash. 2005) (noting that "demonstrating [a] device" or "displaying . . . a patented item for advertising may not technically constitute a 'use'").  <u>But see</u> <u>Donnely Corp. v. Reitter & Schefenacker GmbH &</u>

Co. KG, 189 F. Supp. 2d 696, 704 (W.D. Mich. 2002) (holding it was "likely . . . that prohibited 'use' would include displaying an infringing product in the context of a sales meeting").

As stated above, C Change displayed prototypes of the IntraTemp™ at the AORN trade show for the purposes of promoting C Change to potential partners, acquirers and/or investors. (Kammer Decl. ¶ 10.) In displaying the prototypes, C Change was not attempting to sell IntraTemp™ units, negotiate sales or take orders and, in fact, no sales were made at the trade show or as a result of the show. (Id. ¶¶ 10, 14-15.) In these circumstances, C Change's display of the IntraTemp™ should not be construed as a "use" within the meaning of section 271(a). Consequently, MSI's claim that C Change infringed its patents by "using" the IntraTemp™ does not arise out of or relate to C Change's activities in the District of Columbia.

### 3. Assertion of Personal Jurisdiction Over C Change Would Be Unreasonable and Unfair.

In addition to establishing that C Change has "purposefully directed" activities at the District of Columbia and that its claims of patent infringement arise out of or relate to those activities, MSI must also show that the exercise of personal jurisdiction over C Change is reasonable and fair. See Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995). This MSI cannot do.

In determining whether the assertion of personal jurisdiction would be constitutionally reasonable, the Federal Circuit considers a number of factors including: "(1) the burden on the defendant, (2) the interests of the forum, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient

19

resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." <u>Inamed Corp. v. Kuzmak</u>, 249 F.3d 1356, 1363 (Fed. Cir. 2001) (citing <u>Asahi Metal Indus. Co. v. Super. Ct. of Cal.,</u> 480 U.S. 102, 113 (1987)).

Requiring C Change to defend a lawsuit in Washington, D.C., would pose a substantial burden on the two-year old company since, among other things, C Change's trial witnesses, files, and patent counsel are located in North Carolina. In addition, MSI is not a resident of the District of Columbia, and given C Change's very limited activities at one trade show there, it is difficult to see how either the District of Columbia, or the interstate judicial system would have a significant interest in having the controversy resolved by this Court. Moreover, MSI's interest in obtaining relief will be fully met through the Declaratory Judgment Action pending in the United States District Court for the Middle District of North Carolina. Given the burden on C Change of defending an infringement action in the District of Columbia and the facts that MSI is not a resident of the District and will be able to obtain any relief to which it is entitled in the Middle District of North Carolina, it would be unfair and unreasonable to assert personal jurisdiction over C Change in this matter.

## CONCLUSION

In addition to establishing that C Change has either transacted business in the District of Columbia or engaged in patent infringement in the District such that it would be subject to personal jurisdiction under the District's long-arm statute, MSI must also show that the exercise of personal jurisdiction over C Change would comply with due process. That is, MSI must show that C Change "purposefully directed" its activities at the residents of the District, that its claims for patent infringement "arise out of or relate to" those activities, <u>and</u>

20

that the assertion of personal jurisdiction is reasonable and fair.   MSI cannot meet this

burden.   Because C Change's only contact with the District of Columbia is its participation in

one trade show which happened to be located in Washington, D.C., because C Change has

not made, used, offered for sale or sold the accused product in the District and because the

exercise of personal jurisdiction over C Change would be unreasonable and unfair, C Change

respectfully requests that the Court grant its Motion to Dismiss for Lack of Personal

Jurisdiction and enter an order dismissing this action.

     This the <u>18th</u> day of September 2006.


                   <u>  /s/ Constance K. Robinson   </u>
                   Constance K. Robinson
                   D.C. Bar No. 244806
                   KILPATRICK STOCKTON LLP
                   607 14th Street, NW
                   Suite 900
                   Washington, DC  20005-2018
                   Telephone:  (202) 508-5822
                   Facsimile:  (202) 585-0002
                   Email:  crobinson@kilpatrickstockton.com

                   Steven Gardner  (*pro hac vice* application pending)
                   N.C. State Bar No. 20984
                   Email:  sgardner@kilpatrickstockton.com
                   Tonya R. Deem (*pro hac vice* application pending)
                   N.C. State Bar No. 23075
                   Email:  tdeem@kilpatrickstockton.com
                   Jon R. Pierce (*pro hac vice* application pending)
                   Texas State Bar No. 24046631
                   Email:  jpierce@kilpatrickstockton.com
                   KILPATRICK STOCKTON LLP
                   1001 West Fourth Street
                   Winston-Salem, NC  27101-2400
                   Telephone:  (336) 607-7300
                   Facsimile:  (336) 607-7500

US2000 9488263.1 55362-317991

## CERTIFICATE OF SERVICE

This certifies that on September 18, 2006, the below attorney of record for Defendant

C Change Surgical LLC electronically filed the foregoing DEFENDANT'S MOTION TO

DISMISS FOR LACK OF PERSONAL JURISDICTION AND MEMORANDUM OF

POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

FOR LACK OF PERSONAL JURISDICTION with the Clerk of Court using the CM/ECF

system which will send notification of such filing to the following:

> James H. Laughlin, Jr., Esq.
> Email: jim.laughlin@hklaw.com
> John P. Moran, Esq.
> Email: john.moran@hklaw.com
> Thomas S. Valente, Esq.
> Email: tom.valente@hklaw.com
>
> HOLLAND & KNIGHT, LLP
> 2099 Pennsylvania Ave., N.W.
> Suite 100
> Washington, D.C. 20006

> ___/s/ Constance K. Robinson___
> Constance K. Robinson
> D.C. Bar No. 244806
> KILPATRICK STOCKTON LLP
> 607 14th Street, NW
> Suite 900
> Washington, DC 20005-2018
> Telephone: (202) 508-5822
> Facsimile: (202) 585-0002
> Email: crobinson@kilpatrickstockton.com

22

US2000 9488263.1 55362-317991