# EXHIBIT 5

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2003 WL 21383325 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern Division.
BLACK & DECKER, INC. and Black & Decker (U.S.) Inc., Plaintiffs,
v.
SHANGHAI XING TE HAO INDUSTRIAL CO., LTD., S.K. Enterprises, Inc., and Qvc Network, Inc., Defendants.
No. 02 C 4615.

June 12, 2003.

MEMORANDUM OPINION AND ORDER
ZAGEL, J.

**\*1** Black & Decker ("B & D") has brought suit in the United States District Court for the Northern District of Illinois against Shanghai Xing Te Hao Industrial Company, Ltd. ("Xing Te Hao") for patent infringement on the basis of selling its "Strategy 18 Volt Cordless 5-in-1 Combination Tool Kit" and its "5 Star 18 Volt Cordless Power Tool." Xing Te Hao moves to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

B & D bears the burden of demonstrating the existence of personal jurisdiction. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir.1997).FN1 Determining whether there is jurisdiction over an out-of-state defendant involves a two-step inquiry: (1) whether the forum state's long arm statute permits service of process, and (2) whether the assertion of personal jurisdiction would violate due process. Pieczenik v. Dyax Corp., 265 F.3d 1329, 1333 (Fed.Cir.), *reh'g en banc den.* (2001). The Illinois long arm statute is coextensive with federal due process requirements. Klump v. Duffus, 71 F.3d 1368, 1371 (7th Cir.1995). Thus, the two-step inquiry folds into one: whether the exercise of personal jurisdiction over the defendant would offend federal due process. *See* Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed.Cir.1998).

FN1. Although cases from the various jurisdictions are cited throughout this opinion, in a patent infringement case, when determining whether jurisdiction over an out-of-state infringer is consistent with due process, Federal Circuit precedent controls. *See* Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed.Cir.1995).

Personal jurisdiction is proper under federal due process only when the defendant has "minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Under "minimum contacts," a defendant may be subject to either specific jurisdiction or general jurisdiction. LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed.Cir.2000). For general jurisdiction, a defendant must have "continuous and systematic" contacts with the forum. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984). Only when "continuous corporate activity within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a Court assert general jurisdiction over a corporate defendant. International Shoe, 326 U.S. at 318. Here, it is fairly obvious and B & D does not dispute that Xing Te Hao's contacts with Illinois are not sufficient enough to give rise to general jurisdiction. In addition, Xing Te Hao's aggregate contacts do not support nationwide personal jurisdiction under the stream of commerce theory. *See* Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (Fed.Cir.1994).

For specific jurisdiction, the Federal Circuit has established a three-prong test that must be satisfied: (1) whether the defendant purposefully directed its activities at the residents of the forum; (2) whether the claim arises out of or is related to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair. HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1307 (Fed.Cir.1999). Here, specific jurisdiction over Xing Te Hao does not exist because it

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-01261-PLF   Document 6-6   Filed 09/18/2006   Page 3 of 5

Not Reported in F.Supp.2d                                                                                         Page 2
Not Reported in F.Supp.2d, 2003 WL 21383325 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

has not purposefully directed its activities at Illinois and because this case does not arise out of or relate to Xing Te Hao's activities in Illinois.

*Nationwide Jurisdiction*

***2** Xing Te Hao's aggregate contacts do not support nationwide personal jurisdiction under the stream of commerce theory. *Beverly Hills,* 21 F.3d 1558. Merely placing products in the stream of commerce is insufficient to sustain personal jurisdiction on this theory. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 112 (1987); *Allen-Bradley Co., Inc. v. Datalink Techs., Inc.,* 55 F.Supp.2d 958, 961 (E.D.Wis.1999) (granting motion to dismiss where plaintiff failed to present evidence showing that defendant played a role in establishing the distribution channel or that defendant had expectation or knowledge that its products were going to the forum). The plaintiff in *Beverly Hills* provided evidence that (1) over 50 of the accused devices were being held for sale in the forum; (2) the defendant's customers in the forum included six retail outlets selling the accused device; (3) there was an ongoing commercial relationship between the defendant and those retail outlets; and (4) there were particularized allegations in the complaint that were not directly contravened by the defendant. 21 F.3d at 1560-64. In contrast, B & D has come forward with no evidence of any kind here. Standing alone, B & D's bare, unparticularized allegations that Xing Te Hao could foresee its accused products making their way into Illinois is too attenuated to constitute purposeful availment of Illinois. *See Kooima v. Zacklift Int'l, Inc.,* 209 F.R.D. 444 (D.S.D.2002).

*Specific Jurisdiction*

Xing Te Hao is a Chinese corporation located in Shanghai, China that manufactures and sells power tools. All of Xing Te Hao's power tools, including the items in dispute, are developed and manufactured in China. When Xing Te Hao sells these products, it receives purchase orders at its Shanghai, China business address, and ships products from Shanghai, China based upon these purchase orders. As for the sale of the items in dispute, none were sold to Illinois customers directly. Indeed, the vast majority of the sales were to S.K. Enterprises, Inc. of Newburgh, New York. As for Illinois, Xing Te Hao is not registered to do business there; has no sales agents, employees, offices, manufacturing facilities, bank accounts, telephones or telephone listings there; has not acquired ownership, possession or control of an asset or thing of value there; and has not made, used, or sold any products there.

B & D argues that Xing Te Hao has purposefully directed its activities at Illinois on the basis of its attendance at two trade conferences in Chicago. As way of background, since the beginning of 2001, Xing Te Hao has been present in Illinois only twice: once in August 2001 and a second time in August 2002.[FN2] Both of these visits occurred when Xing Te Hao was an exhibitor during the National Hardware Show held in conjunction with International Hardware Week at McCormick Place in Chicago, Illinois. Xing Te Hao exhibited at these shows to tens of thousands of industry professionals from across the world. Of these two visits to Illinois, Xing Te Hao exhibited one of the allegedly infringing products only once. Specifically, Xing Te Hao displayed a single 5-in-1 power tool at the August 2001 show. This power tool was located on a display board among various power tool products but was not used or otherwise included as part of any demonstration during the show. Unfortunately for B & D, mere attendance at a trade conference is insufficient to assert specific jurisdiction. *See Geodetic Services Inc. v. Metronor AS,* 2000 WL 1027222, 55 U.S.P.Q .2d 1365, 1368 (M.D.Fla.2000). Accordingly, this Court will not exercise personal jurisdiction over a foreign defendant based on mere attendance at a trade show in the forum.

> [FN2.] The patents in suit issued on January 9, 2001 and September 11, 2001.

**\*3** In addition, although a "defendant who sends an agent into Illinois to solicit or negotiate a contract is transacting business within the statutory definition" and thus subject to personal jurisdiction, *see Scovil Mfg. Co. v. Dateline Elec. Co.,* 461 F.2d 897, 900 (7th Cir.1972), I reject B & D's argument that this is such a situation here. The defendant in *Scovil* made at least seven trips to Chicago over a three-year period

Case 1:06-cv-01261-PLF    Document 6-6    Filed 09/18/2006    Page 4 of 5

Not Reported in F.Supp.2d                                                                                                                Page 3
Not Reported in F.Supp.2d, 2003 WL 21383325 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

where it had negotiations and post-contract discussions with the plaintiff. *Id.* at 898-900. Moreover, the contract that formed the basis of the suit was allegedly breached by the defendant in Illinois. *Id.* at 898. In this case, Xing Te Hao has been present in Illinois only twice since 2001 and, unlike in *Scovil,* the facts do not demonstrate that there were any sales, uses, or offers to sell the accused product in Illinois.

In relation to the second element of the *HollyAnne* test, B & D argues that its patent infringement claim arises out of or relates to Xing Te Hao's limited activities in Illinois on the ground that: (1) bringing the 5-in-1 power tool to the 2001 National Hardware Show in Chicago constituted "importation" of the infringing tool for use at the trade show pursuant to 35 U.S.C. § 271(a) and/or (2) displaying the 5-in-1 power tool at the same trade show constituted an "offer for sale" of the infringing tool pursuant to *3D Systems, Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1379 (Fed.Cir.1998). Regarding the first argument, simply bringing a product in the United States for display at a trade show does not constitute importation under § 271(a) absent evidence that the corporation brought the particular product into the United States with the intent to sell it. *Creo Products Inc. v. Presstek, Inc.,* 166 F.Supp.2d 944, 976 (D.Del.2001), *aff'd,* 305 F.3d 1337 (Fed.Cir.2002); *see also Cybiotronics, Ltd. v. Golden Source Electronics, Ltd.,* 130 F.Supp.2d 1152, 1176 (C.D.Cal.2001) (refusing to find infringement under § 271(a) for "importing into the United States" where there was no evidence that foreign corporation transmitted product samples for purposes of sale). Here, B & D has provided no evidence that Xing Te Hao had any intent to sell the single 5-in-1 tool that it brought to Illinois. Regarding the second argument, an "offer to sell" requires description of the product and a price at which it could be purchased. *3D Systems, Inc.,* 160 F.3d at 1379.FN3 Here, B & D cannot point to any evidence of product descriptions or price quotations by Xing Te Hao during its visit to Illinois, *see HollyAnne v. TFT,* 199 F.3d 1304, 1309-10 (Fed.Cir.1999), and merely displaying an accused product, even in an obviously commercial atmosphere such as a trade show, does not, by itself, constitute an offer to sell. *See,* *e.g., Fluid Mgmt. Ltd. v. H.E.R.O. Indus., Ltd.,* No. 95 C 5604, 1997 WL 112839 (N.D.Ill. Mar. 11, 1997); *Intermedics, Inc. v. Ventritex, Inc.,* 775 F.Supp. 1269, 1286 (N.D.Cal.1991). Accordingly, nothing in the record supports that conclusion that Xing Te Hao has offered to sell its accused product in Illinois.

> FN3. To constitute an offer, a communication must constitute an offer under the "norms of traditional contractual analysis." *Rotec Indus., Inc. v. Mitsubishi Corp.,* 215 F.3d 1246, 1255 (Fed.Cir.2000). Under traditional contract law, an offer communicates a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1979).

*Additional Discovery*

**\*4** In the event that I am inclined to grant Xing Te Hao's motion, B & D requests "a chance to probe further" by taking jurisdictional discovery. *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 283 (3rd Cir.1994); *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 456 (3d Cir.2003) ("courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.' "). As the foregoing discussion demonstrates, B & D has failed to provide enough evidence establishing the existence of personal jurisdiction over Xing Te Hao in this matter, and I am thus inclined to grant the motion. However, Xing Te Hao has identified several possible bases for personal jurisdiction, which, upon further discovery, may prove sufficient. As a matter of discretion, I grant B & D an additional eight weeks for limited jurisdictional discovery on the following items:

1. Whether Xing Te Hao had any intent to sell the single 5-in-1 tool that it brought to Illinois for the August 2001 show such that its activity constituted "importation" of an accused device;

2. Whether Xing Te Hao offered any product descriptions or price quotations of the single 5-in-1 tool that it brought to Illinois such that its activity constituted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-01261-PLF   Document 6-6   Filed 09/18/2006   Page 5 of 5

Not Reported in F.Supp.2d                                                                                                                   Page 4
Not Reported in F.Supp.2d, 2003 WL 21383325 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

an "offer to sell;" and

3. Whether Xing Te Hao's aggregate contacts support nationwide personal jurisdiction under the stream of commerce theory as articulated in *Beverly Hills.*

Four weeks after the close of discovery, B & D is ordered to submit a brief addressing how the new evidence gathered during this extended discovery affects the three issues specifically identified above. Four weeks later, Xing Te Hao is ordered to reply to B & D's submission. Shortly thereafter, I will issue a final ruling on the motion to dismiss.

In the meantime, Xing Te Hao's Motion to Dismiss for Lack of Personal Jurisdiction is ENTERED AND CONTINUED.

N.D.Ill.,2003.
Black & Decker, Inc. v. Shanghai Xing Te Hao Industrial Co., Ltd.
Not Reported in F.Supp.2d, 2003 WL 21383325 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 23816737 (Trial Motion, Memorandum and Affidavit) Black & Decker's Response to Xing Te Hao's Motion to Dismiss (Sep. 3, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23816733 (Trial Motion, Memorandum and Affidavit) Shanghai Xing Te Hao's Reply Brief in Support of its Motion to Dismiss for Lack of Personal Jurisdiction (May 29, 2003) Original Image of this Document with Appendix (PDF)

• 2003 WL 23816730 (Trial Motion, Memorandum and Affidavit) Black & Decker's Response to Xing Te Hao's Motion to Dismiss (May 15, 2003) Original Image of this Document (PDF)

• 2003 WL 23816726 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to S.K.'s Counterclaim (Mar. 17, 2003) Original Image of this Document (PDF)

• 2003 WL 23816727 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Ovc's Counterclaim (Mar. 17, 2003) Original Image of this Document (PDF)

• 2003 WL 23816720 (Trial Pleading) Qvc, Inc.'s Answer and Affirmative Defenses to Plaintiffs' Complaint for Patent Infringement and Counterclaim (Feb. 21, 2003) Original Image of this Document (PDF)

• 2003 WL 23816725 (Trial Pleading) S.K. Enterprises, Inc.'s Answer to Plaintiffs' Complaint for Patent Infringement and Counterclaim (Feb. 21, 2003) Original Image of this Document (PDF)

• 2002 WL 32674113 (Trial Pleading) Local Rule 3.4 Notice (Jun. 27, 2002) Original Image of this Document with Appendix (PDF)

• 1:02cv04615 (Docket) (Jun. 27, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.