# EXHIBIT 7

Slip Copy                                                                                                              Page 1
Slip Copy, 2006 WL 239802 (D.Mass.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Massachusetts.
EURO-PRO OPERATING LLC, d/b/a Euro-Pro Corporation Plaintiff,
v.
Al SCUTTE, Jr., Al Scutte, III, Sales & Marketing Specialists Co., Defendants.
No. Civ.A. 05-11946-DPW.

Jan. 31, 2006.

Damon W.D. Wright, Roger A. Colaizzi, Venable LLP, Washington, DC, Daniel J. Gleason, Michelle Chassereau Jackson, Nutter, McClennen & Fish, LLP, Nancy E. Maroney, Testa, Hurwitz & Thibeault, LLP, Boston, MA, for Plaintiff.
Adam J. Glazer, Schoenberg, Fisher, Newman & Rosenberg Ltd., Chicago, IL, Jill K. Hauff, Nicholas P. Alexander, Morrison Mahoney LLP, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER*
WOODLOCK, J.
**\*1** Euro-Pro Operating LLC ("Euro-Pro") develops, manufactures, and markets a variety of household products. From 1997 to July 2005, Euro-Pro employed independent contractors Al Scutte Jr., the president of Sales & Marketing Specialists Co. ("SMS"), and Al Scutte III to market Euro-Pro's products through The Home Shopping Network ("HSN"). Immediately after their relationship with Euro-Pro terminated, the defendants began working as sales representatives for The Holmes Group, Inc., a Euro-Pro competitor that does business under the name Rival ("Rival").

Euro-Pro is a Delaware corporation headquartered in Massachusetts. The Scuttes are Florida residents, and SMS is a Florida corporation with its principal place of business in Florida. HSN's corporate headquarters, television studios and broadcasting facilities are also located in Florida. Rival is headquartered in Massachusetts.

Euro-Pro brings this action alleging that Defendants were privy to, obtained, and used Euro-Pro trade secrets and competitively sensitive information on behalf of Rival. Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, or in the alternative, for a transfer of venue to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).

Finding that Defendants lack the requisite minimum contacts to establish personal jurisdiction and that venue in this court is improper, I transfer the case to the Middle District of Florida pursuant to 28 U.S.C. § 1406(a).

I. DISCUSSION

A. Personal jurisdiction

The exercise of personal jurisdiction over an out-of-state defendant in this diversity action must be authorized by state statute and must comply with the Constitution. *Harlow v. Children's Hospital,* 432 F.3d 50, 57 (1st Cir.2005). Massachusetts' long arm statute extends jurisdiction to the bounds of the United States Constitution.[FN1] *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole,* 290 F.3d 42, 52 (1st Cir.2002) (citing *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.,* 361 Mass. 441, 443, 280 N.E.2d 423 (1972)). Consequently, this Memorandum focuses on the constitutional inquiry.

> FN1. The Defendants' memorandum supporting their motion to dismiss does not contest that the Massachusetts long arm statute purported to confer jurisdiction. Euro-Pro seeks to construe this as an admission by Defendants that (1) they transacted business in Massachusetts and (2) their claim arose from the transaction of that business.
> In their reply memorandum, Defendants vigorously deny that they conceded those points. I agree that they did not. Because the Massachusetts long arm statute reaches to the length of the Constitution, the case turns on the Constitutional analysis. To interpret

Case 1:06-cv-01261-PLF   Document 6-8   Filed 09/18/2006   Page 3 of 7

Slip Copy
Slip Copy, 2006 WL 239802 (D.Mass.)
(Cite as: Slip Copy)

Page 2

> Defendant's focus on Constitutional analysis as conceding key points in that analysis would be untenable.

The Constitution imposes three requirements. *Harlow,* 432 F.3d at 57. First, the defendant must have "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "Minimum contacts" can be established by a showing of either general or specific jurisdiction. *Harlow,* 432 F.3d at 57. For general jurisdiction, the defendant must have "continuous and systematic contacts with the state." *Id.* For specific jurisdiction, the evidence must show that "the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." *Id.* at 61.

Second, for either general or specific jurisdiction, the defendant must "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). "[R]andom, isolated, or fortuitous" contacts are insufficient. *United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1088 (1st Cir.1992) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). The defendants' contacts with the forum state must be such that they should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

**\*2** Finally, "the exercise of jurisdiction must be reasonable under the circumstances." *Harlow,* 432 F.3d at 57. In making this determination, courts consider a number of criteria, known as "Gestalt factors", *163 Pleasant Street,* 960 F.2d at 1088, which include: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Harlow,* 432 F.3d at 67.

*1. Specific jurisdiction*

Euro-Pro claims that Defendants received trade secrets and competitively sensitive information through in-person meetings, telephone calls, and correspondence with Euro-Pro personnel in Massachusetts over a period of eight years. Defendants then allegedly used that information to benefit a Euro-Pro competitor, also in Massachusetts. Thus, Euro-Pro contends, specific jurisdiction exists because the mechanism for causing the injury and the injury itself took place in Massachusetts.

Euro-Pro is unable to provide sufficient support for its allegations. At a hearing on this motion to remand, Euro-Pro admitted that the Scuttes did not attend six of the eight Massachusetts meetings listed in Euro-Pro's brief.[FN2] For their part, the Scuttes claim that they went to Massachusetts in specific connection with their representation of Euro-Pro only two or three times. They also attended three or four national sales conferences held by Euro-Pro in Massachusetts and numerous such conferences in other states. This sporadic and infrequent travel to Massachusetts is inadequate to support a finding of personal jurisdiction.

> [FN2.] Defendants produced hotel and rental car receipts to prove that they were not in Massachusetts on the specified dates. At the hearing, Euro-Pro stated that it had listed the wrong dates for the alleged meetings. Euro-Pro offered at the hearing to provide a new affidavit. I declined the invitation to consider new information belatedly tendered.

The only evidence that Euro-Pro provides of regular communication of trade secrets between Euro-Pro personnel in Massachusetts and Defendants is a collection of 29 pages of emails attached to a declaration submitted by Euro-Pro. These emails are insufficient for establishing jurisdiction because they provide no evidence of the physical location of the sender or the receiver. Some of the messages were sent or received from Blackberry wireless devices, which are portable from state to state. Most of the recipients are listed

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

without a hostname, and the only identified hostname with a geographical connection suggests a Florida location.[FN3]

> FN3. An email from Al Scutte III to Mark Rosenzweig dated March 11, 2005, shows Scutte's sending email address as ascutte@tampabay.rr.com.

The content of the emails is no more helpful to Euro-Pro. Only two of them reference Massachusetts, and neither do so in a way that shows a significant connection to the state. One message sent from Al Scutte to Kathleen Kelly on November 30, 2004, indicates that Scutte intended to be in Boston the next day. Rosenzweig Decl. Ex. at 1. Another message dated December 5, 2003, from Scutte to a Mr. Rosen mentions the "new units" they had spoken about in Boston. Rosenzweig Decl. Ex. at 26. Both messages are very brief and somewhat cryptic; they are not the proof necessary to establish personal jurisdiction.[FN4]

> FN4. Only two other emails mention any geographic location in the text of the message. One, dated January 12, 2005, sent from Al Scutte to Elpie Anastopuolos discussed a meeting at Fort Lauderdale. Rosenzweig Decl. Ex. at 13. Another, sent from Al Scutte to Mark Rosenzweig on March 8, 2005, discussed Scutte's recent trip to China during which he conducted business for Euro-Pro. *Id.* at 29.

**\*3** More important than the mere number of visits or emails to Massachusetts is that the alleged communication of trade secrets and competitively sensitive information that forms the basis for this suit does not appear to have occurred primarily during Defendants' interactions with or in Massachusetts. Euro-Pro claims that it imparted sensitive information to Defendants during national sales meetings in Massachusetts. But an occasional conference over an eight-year time period does not provide the basis for personal jurisdiction. That Defendants also attended similar conferences in Alabama and Canada, where personal jurisdiction for this case plainly does not exist, suggests the conclusion that the activity that gave rise to this case is insufficiently related to Massachusetts as well.

Although no evidence has been presented regarding the nature of the two or three visits that the Scuttes made to Massachusetts specifically in connection with their representation of Euro-Pro, the substance of their business relationship and the alleged harm occurred in Florida. The trade secrets that Euro-Pro shared with Defendants were related to Euro-Pro's sales to and advertising with HSN. HSN's corporate headquarters, television studios, and broadcasting facilities are located in Florida. Defendants, both Florida residents, worked from their offices in Florida to represent Euro-Pro at HSN, again in Florida. Euro-Pro maintains an office in Florida. Defendants claim that their primary contact with Euro-Pro was through its Florida office. Euro-Pro does not deny that its significant contact with Defendants occurred through the Florida office.

Euro-Pro argues that it suffered injury in Massachusetts from Defendants' alleged misuse of trade secrets because Rival, the company that hired Defendants after they left Euro-Pro, is a Massachusetts company. This argument suffers from two flaws. First, any harm that occurred in this case, occurred in Florida. The Scuttes performed the same services for Rival that they did for Euro-Pro. Complaint at ¶ 19. That is, they represented Rival in the sales of its products to and advertising on HSN. That activity took place in Florida.

Second, the fact that Defendants conducted business with a Euro-Pro competitor in Massachusetts after its relationship with Euro-Pro ended is not relevant to establishing specific personal jurisdiction. The extent of the Scuttes' business in Massachusetts may tend to prove general jurisdiction, but Euro-Pro does not argue that such jurisdiction exists.[FN5]

> FN5. Nor could it. Defendants have no offices or employees in Massachusetts, are not licensed to do business here, pay no taxes here, and have no property or bank accounts here. Scutte Affidavit at ¶ 3. Euro-Pro argues that Defendants generated income from Massachusetts because they sold Euro-Pro products to national companies, such as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 239802 (D.Mass.)
(Cite as: Slip Copy)

Case 1:06-cv-01261-PLF   Document 6-8   Filed 09/18/2006   Page 5 of 7

Page 4

Lowes Companies, Inc. and Big Lots Stores, Inc., which have chain stores in Massachusetts. Given that "[t]he standard for evaluating whether ... contacts satisfy the constitutional general jurisdiction test is considerably more stringent than that applied to specific jurisdiction questions," *Harlow v. Children's Hospital,* 432 F.3d 50, 64 (1st Cir.2005) (internal citations and quotations omitted), the connection alleged here between Defendants and Massachusetts is too attenuated to meet this test.

### 2. Purposeful availment

Because the Scuttes had a continuing business relationship with Euro-Pro, a Massachusetts corporation, and traveled to Massachusetts in furtherance of that relationship. Euro-Pro argues that they purposefully availed themselves of the benefits and protections of Massachusetts. I disagree.

Although a single meaningful contact with the forum state can be sufficient to prove purposeful availment, *Pritzker v. Yari,* 42 F.3d 53, 61 (1st Cir.1994), I find no such contact here. The sales meetings and emails that Euro-Pro offers as evidence of purposeful availment do not, as discussed above, demonstrate more than isolated or fortuitous contact.

**\*4** Euro-Pro relies heavily on *C & W Fabricators, Inc. v. Metal Trades, Inc.,* 2002 WL 32759591 (D.Mass. Mar.27, 2002) (Gorton, J.) to support its position. *C & W* arose out of an alleged breach of a non-disclosure agreement between the plaintiff C & W, a Massachusetts gas turbine manufacturer, and the defendant MTI, a South Carolina metal fabricator. *Id.* at \*1. MTI maintained no offices in Massachusetts, paid no taxes here, had no employees, phone listing, advertising or license to conduct business in Massachusetts. *Id.* at \*2. MTI prepared a quote for C & W in South Carolina, and MTI signed the agreements there. *Id.* All of the work required under the contract was performed in South Carolina. *Id.* at \*3. MTI made only one trip to Massachusetts, to observe C & W's operations. *Id.* at \*2.

Despite the few in-person contacts with Massachusetts, Judge Gorton found both relatedness and purposeful availment. *Id.* at \*6. He relied on the "countless" telephone calls and facsimile transmissions that MTI made to C & W in Massachusetts, and the responses received, at least some of which contained information that became the subject of the lawsuit. *Id.* at \*5. He also noted that MTI sent 149 invoices to C & W in Massachusetts over the course of six years and that MTI derived "substantial" income from the Massachusetts company. *Id.* at \*6. With its business in South Carolina about to dry up, MTI made a deliberate decision to expand out-of-state. *Id.* Importantly, the non-disclosure agreement that formed the basis for the suit was faxed by MTI to Massachusetts, where it was signed by C & W, and then faxed back to MTI. *Id.*

A key difference between this case and *C & W* is the lack of evidence of extensive contacts between Defendants and Massachusetts. As in *C & W,* sending invoices to Massachusetts, making telephone calls there, sending and receiving faxes from there, and signing a non-disclosure agreement with a Massachusetts company in Massachusetts can show purposeful availment of the benefits and protections of Massachusetts. The sheer volume and duration of the communications in *C & W* and the fact that sensitive information was imparted in some of them strengthen the case for relatedness and purposeful availment. Such contacts put a defendant on "fair notice" that it might be subject to litigation in Massachusetts. *See Harlow,* 432 F.3d at 62.

In contrast, Defendants in this case had no such fair notice. Their contact with Massachusetts was sporadic and insignificant. The emails provide no evidence of sufficient contact with Massachusetts, and no records of telephone calls, faxes, or letters to or from Massachusetts containing contracts, business agreements, trade secrets or other sensitive information have been provided. Although the Scuttes chose to do business with Euro-Pro, a company headquartered in Massachusetts, that business was conducted in Florida and the alleged injury occurred in Florida, not in Massachusetts.

### 3. Reasonableness

**\*5** The Gestalt factors also weigh against personal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

jurisdiction. To be sure, the first factor, the defendant's burden of appearing in Massachusetts, tips slightly towards Euro-Pro. "[D]efending in a foreign jurisdiction almost always presents some measure of inconvenience, and hence this factor becomes meaningful only where a party can demonstrate a 'special or unusual burden.' " Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir.1995). Defendants claim that defending in Massachusetts is unduly burdensome because they are Florida residents who maintain no offices or employees in Massachusetts.FN6 That Defendants have no offices in Massachusetts presents an inconvenience, but not a special or unusual one; certainly it is one that modern business travelers can overcome without difficulties of constitutional magnitude.FN7

> FN6. Defendants allege that through its choice of forum, Euro-Pro is attempting to "vex, harass, or oppress" the Defendants by inflicting unnecessary expense upon them. See Ticketmaster-New York v. Alioto, 26 F.3d 201, 211 (1st Cir.1994). I find no merit to this claim. Euro-Pro had a number of legitimate reasons to bring suit in Massachusetts, not the least of which is that it is headquartered here. Defendants may be inconvenienced, but there is no evidence that Euro-Pro chose Massachusetts for that reason.

> FN7. Defendants further contend that litigating in Massachusetts is burdensome because the witnesses and documents needed for their defense are in Florida. Euro-Pro responds that witnesses and evidence are also located in Massachusetts. I address this issue in the discussion of venue. See Harlow, 432 F.3d. at 68 (finding that issues of relative convenience and burden are more appropriately dealt with under the question of venue.)

The second factor, the forum state's interest in adjudicating the dispute, weighs against exercising jurisdiction in this court. Although Massachusetts certainly has an interest in providing Massachusetts-based companies with a forum for litigation, the alleged wrongdoing took place in Florida. Florida's interest in adjudicating a dispute that arose from conduct within its borders, between a party that is based in Florida and another that has an office there outweighs Massachusetts' interest.

The third consideration is Euro-Pro's interest in obtaining convenient and effective relief. This, again, cuts against personal jurisdiction. Although I must "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience," Ticketmaster-New York v. Alioto, 26 F.3d 201, 211 (1st Cir.1994), I do not find that Euro-Pro would be significantly inconvenienced by litigating in Florida. Euro-Pro maintains an office in Tampa, Florida, where its HSN activities are focused. Euro-Pro claims that it will be calling witnesses who are based in Massachusetts and conducting discovery of Rival in Massachusetts, but Defendants point out that a number of witnesses are also located in Florida and discovery will be carried out there, as well. Consequently, litigating in Florida will not cause Defendants much more inconvenience than litigating in Massachusetts.

The fourth factor, the effective administration of justice, is equally served in Massachusetts or Florida. I find no concern about piecemeal litigation or special concerns regarding judicial economy implicated in this case, nor is there any suggestion that a Florida district court cannot competently apply Massachusetts law.

The fifth and last of the Gestalt factors concerns the interests of Massachusetts and Florida in substantive social policies. Both states share an interest in preventing the misappropriation of trade secrets. Because Florida courts would be applying Massachusetts law in this case, litigating in Florida would not subvert Massachusetts' interests in promoting its social policies.

In sum, the Gestalt factors militate against a finding of personal jurisdiction. This, in combination with the lack of minimum contacts and purposeful availment, lead to the conclusion that an exercise of personal jurisdiction in this case would violate the Constitution.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

B. Venue

**\*6** In diversity cases such as this, venue is proper in a judicial district in which (1) the defendant resides, (2) a substantial part of the events giving rise to the claim occurred, or (3) the defendant is subject to personal jurisdiction. 28 U.S.C. § 1391. Here, Defendants reside in Florida, the events giving rise to the cause of action occurred in Florida, and I have held that Defendants are not subject to personal jurisdiction in Massachusetts. Thus, venue in Massachusetts is improper.

When venue is improper in the district in which a case is originally filed, a court shall dismiss the case or, "in the interest of justice," transfer it to another district in which it could have been brought.FN8 28 U.S.C. § 1406(a). The purpose of allowing transfer under § 1406(a) is to remove "whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits." *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466-67, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). This authority to transfer exists whether or not the transferor court had personal jurisdiction over the defendants. *Id.* at 466.

> FN8. 28 U.S.C. § 1406(a) provides:
> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought.
> Defendants moved for a transfer pursuant to 28 U.S.C. § 1404(a). Because I found that personal jurisdiction does not exist here, § 1404(a) does not apply. *See Albion v. YMCA Camp Letts,* 171 F.3d 1, 2 (1st Cir.1999) ( "Section 1404(a) is a codification of the doctrine of forum non conveniens," which "can never apply if there is absence of jurisdiction or mistake of venue.").

In this case, fairness and convenience are best served by transferring to the Middle District of Florida. As discussed above, the conduct giving rise to the cause of action occurred in Florida. Euro-Pro has an office in Florida, numerous witnesses are located there, and discovery will be centered there. Florida, therefore, is a convenient and proper location for this litigation to take place. To dismiss the case and leave the parties to file anew in another district merely increases expenses and delays resolution of the dispute.

II. CONCLUSION

For the reasons set forth more fully above, Defendants' motion to dismiss for lack of personal jurisdiction is DENIED, and this case is transferred to the Middle District of Florida, pursuant to § 1406(a).

D.Mass.,2006.
Euro-Pro Operating LLC v. Scutte
Slip Copy, 2006 WL 239802 (D.Mass.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 360405 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum in Support of their Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, to Transfer Venue (Jan. 12, 2006) Original Image of this Document (PDF)
• 2005 WL 3534086 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of their Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, to Transfer Venue (Dec. 1, 2005) Original Image of this Document (PDF)
• 2005 WL 2862821 (Trial Pleading) Verified Complaint for Breach of Duty of Loyalty, Misappropriation of Trade Secrets, Unfair Competition, Constructive Trust and Injunctive Relief (Sep. 26, 2005) Original Image of this Document (PDF)
• 1:05cv11946 (Docket) (Sep. 26, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.