UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

MEDICAL SOLUTIONS, INC.,

                Plaintiff,

  v.

C CHANGE SURGICAL LLC,

                Defendant.

Civil Action No. 1:06CV01261-PLF

**ORAL ARGUMENT REQUESTED**

---

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

James H. Laughlin, Jr. (DC Bar No. 105064)
John P. Moran (DC Bar No. 375888)
Thomas S. Valente (DC Bar No. 480622)
HOLLAND & KNIGHT, LLP
2099 Pennsylvania Ave., N.W.
Suite 100
Washington, D.C. 20006
Telephone: 202 955-3000
Facsimile: 202 955-5564

October 25, 2006           Counsel for Plaintiff, Medical Solutions, Inc.

Plaintiff Medical Solutions, Inc. ("MSI"), by and through counsel, hereby opposes the Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendant C Change Surgical LLC ("C Change"), relying on the following points and authorities. In support of its Opposition, MSI respectfully relies on the Declaration of Chad M. Cordell,[1] as well as upon certain facts asserted in the Declaration of Patrick Kammer that was previously submitted to this Court by C Change. MSI hereby requests oral argument on this matter.

## INTRODUCTION

Defendant C Change promoted its IntraTemp product at a meeting for nurses that took place here in the District of Columbia. It subsequently sold IntraTemp to one hospital and placed it with another; these hospitals learned of IntraTemp because of C Change showing the infringing product at the Washington, D.C., event. Having come to D.C. and used the infringing product and offered it for sale, C Change is indeed subject to the jurisdiction of this Court.

## STATEMENT OF FACTS

In March of this year, C Change Surgical showed its infringing IntraTemp product and used the infringing product at the 2006 Association of PeriOperative Registered Nurses Congress (the "2006 AORN Meeting").[2] This participation and use of the infringing product is shown on C Change's own website, as seen below:[3]

---

[1] A copy of the Declaration of Chad M. Cordell ("Cordell Dec.") is attached hereto as Exhibit 1. The website references in paragraphs 4 and 13 of that copy appear to be illegible, but references to these websites are provided in footnotes 3 and 4 below. The original Declaration has been sent to MSI's counsel, and a better copy of the Declaration will be submitted to the Court when the original is received.

[2] *See* Declaration of Patrick Kammer in Support of Defendant C Change Surgical LLC's Motion to Dismiss for Lack of Personal Jurisdiction ("Kammer Dec.") at ¶ 8.

[3] *See* http://www.cchangesurgical.com/press.html#, then "CLICK HERE to see photos from the 2006 AORN World Congress," also attached as Exhibit C to Cordell Dec.



Nurses attending the AORN World Congress see how easy the IntraTemp system is to prepare for sterile use. Simply plug the machine in and drape it like a ring-stand.

The 2006 AORN Meeting was held in Washington, D.C., and members of the District of Columbia Chapter of the Association of PeriOperative Registered Nurses' actively participated in the meeting.[4] The D.C. Chapter President explains on its website that, "Our first Congress in DC was a wonderful experience for those of us who were able to attend. I'm very proud to say I'm a member of the AORN Chapter of Greater Washington, DC, because all of you did a great job. This Congress will be remembered as one of the best."[5]

---

[4] *See, generally,* "May President's Message" on the Chapter's website (http://www.aorndc.org/), attached as Exhibit D to the Cordell Dec.

[5] *See id.* at p. 1-2. Attendees to the 2006 AORN Meeting could provide contact information to exhibitors by swiping their badges at an exhibitor's booth. However, the only information that the exhibitors could receive as a result of the swiping of these badges was that provided by the attendee to the AORN. *See* Cordell Dec. at ¶ 9.

At AORN Meetings, exhibitors such as C Change have the opportunity to speak with potential customers, demonstrate their equipment, and create a marketing demand for their products.[6] Institutions such as hospitals and other medical facilities generally acquire surgical equipment, so while it may be that very few products are actually sold at an AORN Meeting that is generally attended by nurses and nurse administrators, the promotion of products by exhibitors at an AORN Meeting often results in subsequent sales to the attendees' hospitals and facilities.[7]

At the 2006 AORN Meeting here in Washington, D.C., C Change had its own booth, with large and visible signage of its "IntraTemp" product.[8] That booth included promotional information regarding IntraTemp, as well as a number of IntraTemp products.[9] It appears that multiple C Change representatives were present at the booth, explaining to potential customers how the IntraTemp product worked.[10] C Change's own website evidences that nurses attending the meeting were customers.[11] And in the photo on the C Change website that is included above, an IntraTemp Unit is shown draped, with an object in it, and the caption reads, "Nurses attending the AORN World Congress see how easy the IntraTemp system is to prepare for sterile use. Simply plug the machine in and drape it like a ring-stand."[12]

A C Change representative also explained to Chad M. Cordell how the IntraTemp equipment operated and how it worked to warm fluids used in the sterile surgical environment of a hospital.[13] That C Change representative further told Mr. Cordell about alleged benefits of the IntraTemp product, such as that it had a removable basin on the top of the product.[14] He even

---

[6] *See id.* at ¶¶ 8, 18
[7] *See id.*
[8] *See id.* at ¶ 10; Exhibits A-C to Cordell Dec.
[9] *See* Kammer Dec. at ¶ 9.
[10] *See* Exhibits A-C to Cordell Dec.
[11] *See* Exhibit B to Cordell Dec.
[12] Exhibit C to Cordell Dec.
[13] *See* Cordell Dec. at ¶ 14.
[14] *See id.* at ¶ 15.

4

showed Mr. Cordell how one could take the basin off of the product and set it on a table when the basin still had fluid in it.[15] The C Change Representative indicated that he wanted to make the IntraTemp product more visible to potential customers.[16] He compared the IntraTemp product to at least one similar product, asserting, among other things, that the surgical drape used on the similar product was very expensive.[17]

The C Change representative did not speak to Mr. Cordell about, or suggest to him in any manner, any interest in a business relationship regarding possible companies to acquire, merge with, or invest in, C Change.[18] Again, C Change's website shows direct commercial sales efforts of C Change at the AORN Meeting, for it includes a photo that says, "Nurses from Georgia provide customer feedback at the AORN World Congress in Washington, D.C."[19]

Subsequently, C Change placed and sold IntraTemp to hospitals that learned of IntraTemp because C Change showed the infringing product at the Washington, D.C. event. According to the declaration submitted by C Change, someone who saw IntraTemp at the 2006 AORN Meeting told Patty McNeal of The Memorial Hospital of Easton, Maryland, about IntraTemp, and the IntraTemp product was subsequently sold to this hospital.[20] Further, according to the declaration submitted by C Change, representatives of Wellstar Kennestone Hospital visited C Change's IntaTemp booth at the 2006 AORN Meeting, and five IntraTemp products were later placed with that hospital.[21]

---

[15] *See id.*
[16] *See id.* at ¶ 16.
[17] *See id.*
[18] *See id.* at ¶ 17.
[19] Exhibit B to Cordell Dec.
[20] *See* Kammer Dec. at ¶¶ 15, 17.
[21] *See* Kammer Dec. at ¶ 16.

**ARGUMENT**

C Change committed patent infringement by using and offering to sell the infringing IntraTemp product in the District of Columbia. C Change then sold and placed IntraTemp in hospitals that learned of IntraTemp because C Change showed the infringing product to customers at the Washington, D.C., event. Having successfully used the District of Columbia for its commercial purposes, and committing a tort while here, C Change is subject to the jurisdiction of this Court.

**I.     C Change Both Used and Offered to Sell IntraTemp In the District of Columbia**

C Change committed the tort of patent infringement by using and offering to sell the infringing IntraTemp product in the District of Columbia. Thus, this Court has personal jurisdiction over C Change under the D.C. Long Arm Statute. D.C. Code § 13-423(a) (allowing for personal jurisdiction in the case of tortious injury in the District of Columbia).

Under the patent law, infringement occurs when a party "… without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271.

Placing products on display during a meeting with a potential customer with the purpose of generating interest in a potentially infringing product has been held to be using the accused products in that forum. *Donnelly Corp. v. Reitter & Schefenacker GmbH & Co.,* 189 F.Supp.2d 696, 704 (W.D. Mich. 2002). Further, displaying the allegedly infringing item, passing out promotional brochures about it, and demonstrating how it works, has been held to be "use" under

the patent infringement statute. *See, e.g., Chen v. Regitar Power Tools, Co., Ltd*. 1987 WL 14734 (N.D. Ill. 1987) at *4. [22]

The prohibition on offers to sell was not always present in the patent statute; it was added to prevent situations in which a party generated commercial interest in a product which infringes a patent. *Donnelly Corp.* at 704. If a Defendant has participated in a trade show, how the Defendant exhibited the product at the show is key to evaluating the significance of the defendant's participation. *Trintec Indus., Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275,1282 (Fed. Cir. 2005). ("This evidence does not explain, however, how Pedre so exhibits. Does Pedre have a booth at the show, and if so, is it manned by a company representative? Does it negotiate sales at the show, or take orders there? This, and perhaps other, additional information is required before the significance of Pedre's participation in the trade shows can be properly evaluated.")

Because there has not yet been discovery on the jurisdictional issue, MSI is required "'only to make a prima facie showing' of jurisdiction to defeat the motion to dismiss." *Id.* at 1283.

Here, the evidence shows that Defendant, C Change, came to a meeting for nurses in Washington, D.C., for the express purpose of showing how its IntraTemp product operated and to generate potential customers for that product.[23] At that meeting, C Change had its own booth,

---

[22] A copy of *Chen v. Regitar* is attached as Exhibit 2 for the Court's convenience.
[23] *See* Cordell Dec. at ¶¶ 10-17; Exhibits A-C to Cordell Dec.

7

a number of IntraTemp machines, and apparently multiple representatives to show and explain to potential customers how IntraTemp worked.[24]

According to C Change's own website, nurses attending the meeting were shown how "to prepare IntraTemp for use."[25] The C Change representative also showed Mr. Cordell how one could take the basin off of the IntraTemp product and set it on a table when the basin still had fluid in it and compared IntraTemp to at least one similar product.[26] Promotional materials were available, potential customers learned about IntraTemp, and they provided feedback about the unit.[27] Customer interest was indeed generated, as C Change subsequently placed and sold IntraTemp to hospitals that learned of the Change IntraTemp product because of the 2006 AORN Meeting.[28]

C Change argues that it "participated in the trade show to promote C Change to potential marketing partners, acquirers and/or investors and to receive feedback on IntraTemp™."[29] Yet, the C Change representative did not speak to Mr. Cordell about, or suggest to him in any manner, any interest in a business relationship regarding possible companies to acquire, merge with, or invest in, C Change.[30] Instead, the evidence establishes that C Change was at the 2006 AORN Meeting to show the infringing IntraTemp product and create customer interest in that product.

After all, this meeting was organized by an association of nurses, not venture capitalists. C Change's website itself demonstrates that it showed the IntraTemp product to these nurses who

---

[24] *See* Kammer Dec. at ¶ 9; Cordell Dec. at ¶¶ 10-17; Exhibits A-C to Cordell Dec.
[25] Exhibit C to Cordell Dec.
[26] *See* Cordell Dec. at ¶¶ 15-16.
[27] *See* Kammer Dec. at ¶ 9; s*ee* Cordell Dec. at ¶¶ 10-17; Exhibits A-C to Cordell Dec.
[28] *See* Kammer Dec. at ¶¶ 15-17
[29] C Change's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction ("C Change's Memo") at p. 5.
[30] *See* Cordell Dec. at ¶ 17.

were <u>customers</u>.[31]  In fact, "approximately 100 clinical professionals left their contact information" for C Change;[32] these clinical professionals were potential customers, not investors. In addition, a C Change Representative indicated to Mr. Cordell that he wanted to make the IntraTemp product more visible to potential customers.[33]  "IntraTemp" was prominently displayed on the booth's signage.[34]  Again, it was not indicated to Mr. Cordell that C Change was at the 2006 AORN Meeting to seek a business relationship regarding possible companies to acquire, merge with, or invest in, C Change, but the facts make it clear that C Change did aim to generate customer interest for IntraTemp at the meeting.

C Change used and offered to sell the infringing IntraTemp Product at the 2006 AORN Meeting in the District of Columbia, and C Change placed and sold IntraTemp to hospitals that learned of IntraTemp solely due to these activities.  As such, C Change cannot now avoid the jurisdiction of this Court.

## II.    Due Process Allows for the Exercise of Specific Jurisdiction Over C Change

By coming to Washington, D.C., and using and offering to sell the infringing IntraTemp product at the 2006 AORN Meeting, C Change purposefully directed its activities at residents of D.C.  These activities gave rise to MSI's claim of patent infringement, and the assertion of personal jurisdiction over C Change in these circumstances is more than fair and reasonable. Thus, this Court may exercise jurisdiction over C Change consistent with the requirements of federal due process.  *See Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995).

---

[31] *See* Exhibit B to Cordell Declaration.
[32] See Kammer Dec. at ¶ 12.
[33] *See* Cordell Dec. at ¶ 16.
[34] *See id*. at ¶ 10; Exhibits A & B to Cordell Dec.

Whether or not C Change sold the product in the District of Columbia, it directed its activities at residents of the District. The members of the DC AORN Chapter were integrally involved in the 2006 AORN Meeting and were, thus, among the targeted potential customers for IntraTemp.[35] In addition, C Change's infringing conduct involving the IntraTemp product is exactly what is at issue in this suit.

C Change submits the statement of its declarant, Patrick Kammer, that, "While I do not know the total number of attendees who visited C Change's booth, approximately 100 clinical professionals left their contact information through the swiping system made available by the organizers of the trade show. Of those approximately 100 clinical professionals, *no one* was from the District of Columbia."[36] (Emphasis in original.) However, while it is true that attendees to the 2006 AORN Meeting could provide contact information to exhibitors by swiping their badges at an exhibitor's booth, by Kammer's own admission, he does not know the total number of attendees who visited C Change's booth; this is because only a portion of those persons visiting a booth would swipe their badges.[37] If an attendee had a Washington, D.C. home or business address, but did not provide this address to the AORN, then even if the card was swiped, the exhibitor would not have a record of the attendee's D.C. address.[38]   This is because the only information that the exhibitors could receive as a result of the voluntary swiping of these badges was that provided by the attendee to the AORN.[39]

Here, MSI has an interest in having the dispute heard by the Court, because an act of infringement occurred within this Court's jurisdiction. The District of Columbia clearly has an

---

[35] *See* Exhibit D to Cordell Dec.
[36] *See* Kammer Dec. at ¶ 12.
[37] *See* Cordell Dec. at ¶ 9.
[38] *See id.*
[39] *See id.*

interest in seeing this infringement case adjudicated here; otherwise, parties may believe that they may come to the District of Columbia, use it to engage in tortious acts such as patent infringement, and then retreat home. The District is not meant to be a safe zone for parties to test the waters with infringing products without fear of incurring jurisdiction.

And, C Change intentionally having come to Washington, D.C., and used and offered to sell the infringing IntraTemp product here, it is clearly fair and reasonable for C Change to be subject to the jurisdiction of this Court for its patent infringement activities here. This situation is no different than if C Change had committed any other tort in the District, such as causing physical injury to someone in D.C. As the Northern District of Illinois has explained in another patent infringement case:

> Regitar has also purposefully availed itself of the privilege of conducting activities within Illinois. It has done more than the Burger King defendants because it voluntarily sent its agent into Illinois to represent the company at the trade show. Surely any corporation must reasonably anticipate being haled into court in a jurisdiction where it deploys its agents--especially given the possibility that those agents might commit torts, as Chen has alleged here.

*Chen* at *4. Having voluntarily come to the District, used the infringing IntraTemp product, and shown that product to potential customers, it should be no surprise to C Change that it is subject to the jurisdiction of this Court.

C Change argues that "requiring C Change to defend a lawsuit in Washington, D.C. would pose a substantial burden on the two-year old company since, among other things, C Change's trial witnesses, files, and patent counsel are located in North Carolina."[40] However, C Change has already shown a willingness to travel to D.C. for other reasons, including to use and offer the IntraTemp product for sale in the District. Indeed, C Change has also had business

---

[40] C Change's Memo at p. 20.

dealings in nearby Maryland.[41] As the Court explained regarding a German defendant in

*Donnelly*:

> The burden on Defendant R & S GmbH to litigate in this Court does not seem unreasonable, particularly given the involvement in Michigan which Defendant R & S GmbH has previously initiated on its own. Defendant R & S GmbH has offered no specific reason why litigating in this Court is burdensome to it other than the distance from its home. While the Court is not unsympathetic to the burden that distance creates, such distances are part of the reality of modern business and are not enough alone to make a particular forum unfair and unreasonable to settle a dispute. *See, e.g.,* Beverly Hills Fan, 21 F.3d at 1569 ("progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome"). This is particularly true in cases like the instant one, where Defendant R & S GmbH has shown a willingness to travel to Michigan in other contexts.

*Donnelly* at 711. As for Plaintiff MSI, its files, and some inventors of the MSI patents are located in northern Virginia, while its patent counsel are located in the Washington, D.C. area.

### III.    MSI's Request in the Alternative for Jurisdictional Discovery

While MSI has shown facts sufficient for personal jurisdiction in this case, even assuming *arguendo* that the Court should find otherwise, then MSI should be granted jurisdictional discovery. "If the District Court concludes that the existing record is insufficient to support personal jurisdiction, Trintec is entitled to jurisdictional discovery. Such discovery is appropriate when the existing record is 'inadequate' to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery." *Trintec Indus., Inc.* at 1283. Should it be necessary, MSI should be entitled to further investigate C Change's actions relating to the 2006 AORN Meeting and the subsequent placements and sale of

---

[41] *See* Kammer Dec. at ¶¶ 15, 17.

IntraTemp, in order to assist the Court in determining whether or not C Change is subject to jurisdiction.

For example, should it be necessary, discovery would enable MSI to discover in more particular detail the actions taken by C Change at the 2006 AORN Meeting.  Further, MSI could inquire of representatives of the Wellstar hospital about their interactions with C Change personnel at the 2006 AORN Meeting and how an IntraTemp product subsequently came to be placed in their hospital.  In addition, to find out the exact circumstances surrounding Memorial Hospital contacting C Change about IntraTemp and the sale of IntraTemp to that hospital, MSI could depose the person who contacted Ms. McNeal at Memorial Hospital about the IntraTemp product after seeing IntraTemp at the 2006 AORN Meeting, as well as Ms. McNeal herself.  Questions including exactly how the C Change product was shown to potential customers and how the potential customers were able to offer feedback to C Change could also be further investigated.

Thus, should it be necessary, MSI should be allowed to discover further details regarding the actions that C Change took at the 2006 AORN Meeting and relating to the subsequent placement and sale of IntraTemp, in order to further assist the Court in determining whether or not C Change is subject to jurisdiction in the District of Columbia.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Defendant's motion to dismiss should be denied or, in the alternative, it is requested that the Court should grant Plaintiff discovery on the issue of jurisdiction.

Respectfully submitted,

_____/s/ James H. Laughlin, Jr._____

James H. Laughlin, Jr. (DC Bar No. 105064)
John P. Moran (DC Bar No. 375888)
Thomas S. Valente (DC Bar No. 480622)
HOLLAND & KNIGHT, LLP
2099 Pennsylvania Ave., N.W.
Suite 100
Washington, D.C. 20006
Telephone: 202 955-3000
Facsimile: 202 955-5564

Attorneys for Plaintiff Medical Solutions, Inc.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MEDICAL SOLUTIONS, INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **C CHANGE SURGICAL LLC,** <br><br> Defendant. | Civil Action No. 1:06CV01261-PLF |

CERTIFICATE OF SERVICE

It is hereby certified that a true copy of **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** and proposed **ORDER** is being served on counsel for Defendant C Change Surgical LLC. on this 25th day of October, 2006, by first class mail to:

>Constance K. Robinson, Esq.
>KILPATRICK STOCKTON LLP
>607 14th Street, NW
>Suite 900
>Washington, DC 20005-2018
>
>Steven Gardner, Esq.
>Tonya R. Deem, Esq.
>Jon R. Pierce, Esq.
>KILPATRICK STOCKTON LLP
>1001 West Fourth Street
>Winston-Salem, NC 27101-2400
>
>  /s/ Thomas Valente

# 4107608_v1