UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEDICAL SOLUTIONS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>C CHANGE SURGICAL LLC,<br><br>Defendant. | Civil Action No. 1:06-cv-01261-PLF |

**REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Defendant C Change Surgical LLC ("C Change") respectfully submits this Reply in further support of its Motion to Dismiss For Lack of Personal Jurisdiction.

**INTRODUCTION**

Medical Solutions, Inc. ("MSI") concedes that the sole basis for asserting personal jurisdiction over C Change is C Change's participation in the 2006 Association of periOperative Registered Nurses ("AORN") Congress, which happened to be held in Washington, D.C earlier this year. In order to establish a prima facie case of personal jurisdiction, MSI must show that C Change committed an act of infringement at the conference and that the exercise of personal jurisdiction over C Change comports with due process. MSI can show neither.

Case law establishes that demonstrating an accused product at a conference does not constitute infringement under the Patent Act. Moreover, such activities are not "purposefully directed" at forum residents within the meaning of the due process clause.

1

Case law clearly provides that MSI must establish the minimal threshold of a <u>prima facie</u> case of personal jurisdiction to be entitled to jurisdictional discovery. MSI has not done so. Thus, MSI is not entitled to jurisdictional discovery.

Accordingly, C Change respectfully requests that the Court dismiss the Complaint so that the parties may pursue their dispute through the declaratory judgment action pending in the Middle District of North Carolina.

## ARGUMENT

To assert personal jurisdiction over C Change under section 13-423(a)(3) of the District of Columbia's long-arm statute, MSI must show that C Change committed an act of patent infringement while at the 2006 conference and that the exercise of jurisdiction over C Change complies with due process. See <u>Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.</u>, 395 F.3d 1275, 1280 (Fed. Cir. 2005). Even if the Court assumes the truth of all factual allegations and construes all inferences from them in the light most favorable to MSI, MSI has failed to make a <u>prima facie</u> case for the assertion of personal jurisdiction over C Change.

**I.     C Change's Demonstration of the IntraTemp™ During the AORN Conference Was Neither an "Offer to Sell" nor a "Use" Within the Scope of the Patent Act.**

MSI contends that C Change's activities at the conference constituted infringement because C Change had a booth, provided a brochure regarding the IntraTemp™, demonstrated the IntraTemp™, and received feedback from attendees. (Opp'n Br. at 7-9.) However, MSI does not dispute or raise any question of fact in response to the sworn declarations of C Change's President and CEO that (a) the IntraTemp™ units demonstrated at the conference were prototypes and not ready for commercial release; (b) C Change did

2

not sell any units, negotiate sales or take orders at the conference; (c) C Change did not have available and, therefore, did not provide any pricing information to the attendees; and (d) C Change's primary purposes in attending the conference were to promote C Change[1] and to receive feedback on the product. (See Kammer Decl. ¶ 10.)

MSI further contends that C Change's activities <u>at the conference</u> constituted infringement because several months <u>after</u> the conference C Change placed units for evaluation with a hospital in Georgia and sold two units to a hospital in Maryland. (Opp'n Br. at 5). However, MSI does not dispute or raise any question of fact in response to the sworn declarations of Mr. Kammer that (a) C Change did not initiate contact with any attendee of the conference; (b) the placement of the units for evaluation by the Georgia hospital resulted from the hospital contacting C Change through its website two months after the conference; and (c) the Maryland hospital representative learned about the IntraTemp™ second-hand from a friend who happened to have visited the C Change display at the conference. (Kammer Decl. ¶¶ 15-16.)

Finally, and most importantly, MSI makes <u>no</u> attempt to distinguish the many cases and precedent cited by C Change in its opening brief which establish that the demonstration or display of an accused product at a conference does not constitute either an infringing "offer to sell" or "use." (<u>See</u> Def.'s Br. in Supp. of Mot. to Dismiss at 15-19.) Instead, MSI relies solely on <u>Donnelly Corp. v. Reitter & Schefenacker GmgH & Co.</u>, 189 F. Supp. 2d

---

[1] The statement in Mr. Cordell's declaration that the representative from C Change did not discuss with him a possible merger, acquisition or investment in C Change (Cordell Decl. ¶ 17) is irrelevant and does not create a factual dispute. With all due respect to Mr. Cordell, he is a product demonstrator—not a potential marketing partner, acquirer or investor. (<u>Id.</u> ¶ 2.)

3

696, 704 (W.D. Mich. 2002) and Chen v. Regitar Power Tools, Co., No. 86 C 6425, 1987 WL 14734, at *4 (N.D. Ill. July 20, 1987)—two cases with dubious effect.

### A. C Change's Demonstration of the IntraTemp™ During the Conference Did Not Constitute an "Offer to Sell."

Whether an infringing "offer to sell" has taken place under 35 U.S.C. § 271(a) is determined "according to the norms of traditional contractual analysis." See Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1254-55 (Fed. Cir. 2000). According to the Federal Circuit,[2] an "offer to sell" must contain at least a description of the goods and a price, and it must be communicated such that it could be made into a contract by simple acceptance. Id. at 1257 (holding that to constitute an "offer to sell," the defendant must have "communicated a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'") (citations omitted). A communication containing a description but no price cannot be an "offer to sell." MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1376 (Fed. Cir. 2005). Likewise, merely demonstrating or providing descriptions of a product at a conference cannot be an "offer to sell" since neither of those activities "communicate[s] a 'manifestation of willingness to enter into a bargain.'" See Black & Decker, Inc. v. Shanghai Xing Te Hao Indus. Co., No. 02C4615, 2003 WL 21383325, *3 (N.D. Ill. June 12, 2003) (stating that "merely displaying an accused product, even in an obviously commercial atmosphere such as a trade show, does not, by itself, constitute an

---

[2] Regarding what constitutes an "offer to sell," Federal Circuit decisions, and not the district court decisions cited by MSI in its Opposition brief, are binding on this Court. See Minnesota Min. and Mfg. Co. v. Norton Co., 929 F.2d 670, 672 (Fed. Cir. 1991) (stating as to matters "within the exclusive subject matter responsibility of" the Federal Circuit that it was "not bound by decisions rendered by other circuit or district courts").

offer to sell" since there must at least be a "description of the product and a price at which it could be purchased").

Addressing none of this precedent and case law, MSI, nevertheless, alleges that C Change "offered to sell" the IntraTemp™ when it demonstrated a prototype of the unit, provided a brochure, received feedback from attendees,[3] and several months later sold two units to one hospital and placed five other units in another hospital for clinical evaluations. (Opp'n Br. at 7-9; see also Kammer Decl. ¶¶ 15-16.) Even though one of its representatives watched a demonstration and discussed the product with the C Change representative, MSI does not allege that during the conference C Change ever discussed prices, quantity, delivery—or any of the other necessary elements of an "offer." (Cordell Decl. ¶¶ 11-16.); see also Rotec, 215 F.3d at 1257. MSI makes no such allegation because it is contrary to the truth. (See Kammer Decl. ¶ 10.)

As explained by Mr. Kammer, C Change did not attend the conference to sell IntraTemp™ units, negotiate sales, or take orders. (Id.) Indeed, during the conference the units on display were prototype units and not ready for commercial release. (Id.) Moreover, C Change neither had available nor provided any pricing information or price quotes during the conference.[4] (Id.)

MSI also points to the fact that, after the conference, C Change sold two IntraTemp™ units to The Memorial Hospital of Easton in Maryland ("The Memorial Hospital") and

---

[3] One of the two primary purposes for attending the Conference was to receive feedback on the IntraTemp™ prototype from the attendees. (Kammer Decl. ¶ 10.) Receiving feedback on a prototype from potential, ultimate end-users is not "direct commercial sales efforts," and MSI has identified no legal authority which would suggest otherwise. (Opp'n Br. at 5.)

[4] MSI contends that C Change must have participated in the conference to generate sales of the IntraTemp™ because, based on Mr. Cordell's "experience," that is what "exhibitor companies" do. (Cordell Decl. ¶ 18.) This conclusory allegation is pure speculation as to C Change's motivations and goals in participating in the 2006 AORN conference and is contrary to the sworn, factual evidence. (Kammer Decl. ¶¶ 10, 13.)

placed five units for clinical evaluation with Wellstar Kennestone Hospital in Georgia ("Wellstar Hospital"). (Opp'n Br. at 5.) But The Memorial Hospital representative contacted C Change <u>only after learning about the product from a friend and reviewing information on C Change's website</u>. (Kammer Decl. ¶ 15 (emphasis added).) The discussion and negotiations leading up to the placement and ultimate sale of the units took place in Maryland and North Carolina—not in Washington, D.C. (<u>Id.</u>) Similarly, while a representative from Wellstar Kennestone Hospital visited C Change's booth at the conference, C Change did not discuss or negotiate the placement of the units at the hospital and did not follow-up with the representative after the conference. (<u>Id.</u> ¶ 13.) The units were placed with the hospital <u>for evaluation only after the hospital contacted C Change through its website two months after the conference</u>. (<u>Id.</u> ¶ 16 (emphasis added).) The discussion and negotiation leading up to the placement took place in Georgia and North Carolina—not in Washington, D.C. (<u>Id.</u>) Thus, while an "offer to sell" regarding these particular units may have occurred at some point, no such offer occurred during the conference or in Washington, D.C. (<u>Id.</u> ¶ 15-16.) MSI has made no factual allegation to the contrary. <u>See</u> D.C. Code § 13-423(a)(4) (requiring both the act—infringing offer to sell—and the injury occur in the District before jurisdiction may be exercised pursuant to the long-arm statute); <u>U.S. v. Smithfield Foods, Inc.</u>, 332 F. Supp. 2d 60 (D.D.C. 2004) (holding that when personal jurisdiction is challenged, the plaintiff must "allege specific facts connecting [the] defendant with the forum."); <u>Donnelly</u>, 189 F. Supp. 2d at 703 n.9 ("There is no evidence of an 'offer to sell' because even if Defendant R & S GmbH's involvement in the offer made to Mercedes could be considered an "offer to sell," there is no evidence as to where that offer was made.").

6

Because MSI does not allege and cannot allege the necessary elements to show that C Change "offered to sell" the accused product during the conference, it has failed to make out a prima facie case of patent infringement based on an "offer to sell."

### B. C Change's Demonstration of the IntraTemp™ During the Conference Did Not Constitute an Infringing "Use."

The Federal Circuit has noted that there are limits as to what can constitute an infringing "use" under 35 U.S.C. § 271(a). Roche Prods., Inc. v. Bolar Pharm. Co., Inc., 733 F.2d 858, 861 (Fed. Cir. 1984) ("Although few cases discuss the question of whether a particular use constitutes an infringing use of a patented invention, they nevertheless convincingly lead to the conclusion that the word 'use' in section 271(a) has never been taken to its utmost possible scope."), cert. denied, 469 U.S. 856 (1984), legislatively overruled on other grounds by 35 U.S.C. § 271(e). The Federal Circuit has not addressed the issue of whether demonstrating an accused product at a conference constitutes an infringing "use," but several lower courts have held that it does not. (See Def.'s Br. in Supp. of Mot. to Dismiss at 18-19 (citing cases).) MSI makes no attempt to distinguish any of the many cases cited by C Change on this issue. Instead, MSI relies solely on Donnelly and Chen.

MSI cites Donnelly for the proposition that "[p]lacing products on display during a meeting with a potential customer with the purpose of generating interest in a potentially infringing product" is an infringing use. (Opp'n Br. at 6.) However, Donnelly is distinguishable from the instant case. In Donnelly, the court considered whether the display of an allegedly infringing product during a sales meeting with a specific, individual customer, DaimlerChrysler, amounted to an infringing "use" of that product in Michigan. 189 F. Supp. 2d at 700, 704. A one-on-one sales meeting with a specific client is markedly

7

different from displaying and demonstrating a product during a national conference with over 600 exhibitors and nearly 7,000 attendees. (Def.'s Br. in Supp. of Mot. to Dismiss at 4-5.) In addition, in Donnelly the defendant's overall activities in Michigan were far more extensive than just the one sales meeting. 189 F. Supp. 2d at 699-701. As the court noted, the defendant regularly "sent its personnel to Michigan . . . for business purposes, including visits to Michigan suppliers, visits to potential customers like the Big Three auto companies, and visits to attend trade shows like the Detroit Motor Show." Id. at 701 (internal citations omitted). Finally, although there was evidence of the defendant's participation in trade shows in the forum, the court held that it was the display of the product during the meeting with DaimlerChrysler that constituted an infringing "use." Id. at 704.

MSI's reliance on Chen, is also misplaced. Chen, a 1987 unpublished decision from the Northern District of Illinois, is contradicted by a more recent decision issuing from the same court.[5] See Fluid Mgmt. Ltd. P'ship v. H.E.R.O. Indus., Ltd., No. 95C5604, 1997 WL 112839, at *4 (N.D. Ill. Mar. 11, 1997) ("We conclude that the mere demonstration or display of an accused product, even in an obviously commercial atmosphere, does not constitute an infringing use under § 271(a).") (internal quotations omitted). Moreover, Chen predates the 1996 amendment to the Patent Act which added "offer to sell" as a distinct infringing act. 5 Donald S. Chisum, Chisum on Patents §§ 16.02[5][g], 16.02[4][b] (2005) (stating that "[w]hether sales demonstrations or displays" of products constituted "'uses'

---

[5] The reasoning stated in Chen is that a "demonstration . . . is likely to ripen into an actual sale and thus 'use.'" Chen, No. 86C6425, 1987 WL 14734 at *4 (internal quotations omitted). Not only is this reasoning arguably superseded by the 1996 amendments to § 271(a), see 5 Donald S. Chisum, Chisum on Patents §§ 16.02[5][g], 16.02[4][b] (2005), but it is not applicable to this case. At the 2006 conference, C Change demonstrated a prototype that was not ready for commercial release for the purpose of promoting C Change to potential marketing partners and investors—not to generate sales. (Kammer Dec. ¶ 10.)

8

became unimportant after" the patent laws were amended adding "'offer to sell' as a distinct infringing act").

Having failed to cite any credible authority for its proposition that C Change committed an infringing "use" by displaying and demonstrating the IntraTemp™ at the AORN Conference, MSI has failed to make out a prima facie case of patent infringement based on a "use."

II. **Even if MSI Was Able to Show that C Change Committed an Infringing Act at the Conference, the Exercise of Personal Jurisdiction Over C Change Would Not Comport with Due Process Since Its Activities Were Not Purposefully Directed at Residents of the District of Columbia.**

To exercise personal jurisdiction over C Change, MSI must show not only that C Change's demonstration of the IntraTemp™ at the AORN Conference was an act of infringement under 35 U.S.C. § 271(a), but also that the exercise of jurisdiction comports with due process. See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1280 (Fed. Cir. 2005). That is, MSI must also show that C Change purposefully directed its allegedly infringing activities at residents of the District and that the exercise of jurisdiction is fair and reasonable. See Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995) (identifying three-prong test).[6]

A. **C Change Has Not Purposefully Directed Its Activities at the Residents of the District of Columbia.**

MSI contends that C Change "purposefully directed" its allegedly infringing activities at the residents of the District because (i) the "members of the DC AORN Chapter were integrally involved in the 2006 AORN Meeting and were, thus, among the targeted potential

---

[6] The second prong of the Akro test is whether the claim arises out of or is related to the activities that the defendant specifically directed at the residents of the forum. Akro, 45 F.3d at 1545. This issue is addressed in the preceding section. See § I, supra.

customers . . ." and (ii) it is possible that some of the attendees who visited C Change's booth but who did not leave their contact information were residents of the District. (Opp'n Br. at 10.) These arguments fail for several reasons.

First, not one of the nearly 100 attendees who visited C Change's booth and left their contact information was from Washington, D.C. (Kammer Decl. ¶ 12.) Asserting that forum residents may have visited the booth and not left contact information is pure speculation. See Caribbean Broad. Sys., Ltc. V. Cable & Wireless PLC, 148 F.3d 1080, 1089 (D.C. Cir. 1998) (affirming dismissal and denial of jurisdictional discovery where plaintiff made conclusory argument that, because defendant sold advertising to more than 500 companies, "the odds were therefore good that it had solicited at least one company located in the District . . . ."); U.S. v. Smithfield Foods, Inc., 332 F. Supp. 2d 55, 59-60 (D.D.C. 2004) (holding that jurisdiction may not be invoked solely on "bare allegations or conclusory statements").

Second, the due process test examines whether the alleged infringing activities were purposefully directed at residents of the forum. Membership in an organization located in the forum does not indicate that the member is a forum resident. In fact, the newsletter relied upon by MSI notes that the April 2006 meeting of the "AORN Chapter of Greater Washington, DC" was to be held in Maryland, suggesting that some of its members are located in Maryland. (Cordell Decl. Ex. D at 2 (emphasis added).)

Third, the evidence submitted by MSI does not support its claim that the members of the Greater DC Chapter were "integrally involved" in the conference and "thus, among the targeted potential customers" of C Change. (Opp'n Br. at 10.) Instead, the evidence suggests that members of the chapter assisted with the "Student Program." (Cordell Decl., Ex. D at 1 ("Many, many thanks to all our volunteers and moderators. The Student Program

on Wednesday was attended by over 300 students. . . . Kudos to all our members who worked very diligently to recruit these students. . . . And many thanks to all our members that volunteered to assist with the clinical 'hands on' portion of the program.").)

Fourth, and most importantly, even if it is assumed that at least some members of the Greater DC Chapter are residents of the District, were "integrally involved" in the Conference, and visited C Change's booth, demonstrating an allegedly infringing product at a conference is not a "purposefully directed" activity. (See Def.'s Br. in Supp. of Mot. to Dismiss at 13-14 (citing cases).) As support for the contrary position, MSI relies solely on Chen. (Opp'n Br. at 4). But as discussed earlier, more recent cases from the same jurisdiction are contrary to Chen. In Fluid Mgmt. Ltd., the court noted that the nonresident defendant's "contacts with Illinois arise from their display and arguable demonstration of their products at the . . . trade show, which happened to be held in Chicago, and their presumable attempt to market their products . . . to several Illinois customers who were planning to attend and/or, did attend, the trade show." No. 95C5604, 1997 WL 112839 at *6. Considering "the nature and quality of" defendants activities, the court held that the defendant had not "purposefully availed themselves of the privilege of conducting business within Illinois such that they should have reasonably anticipated that they might be haled into court in Illinois." Id. See also Black & Decker, No. 02C4615, 2003 WL 21383325 at *1-2 (holding that participation in a trade show did not constitute purposefully directed activity).

**B.    The Assertion of Personal Jurisdiction Over C Change Would be Neither Reasonable Nor Fair.**

MSI states "[t]he District of Columbia clearly has an interest in seeing this infringement adjudicated here." (Opp'n Br. at 10-11.) However, any interests that the

11

District of Columbia might otherwise have in this matter are "considerably" diminished by the fact that MSI is a Virginia resident. (Id. at 12.) See Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 114 (1987) ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished.").

MSI argues that there would be no burden imposed on C Change from requiring it to litigate this matter in the District of Columbia, and for support points to the fact that C Change has had "business dealings in nearby Maryland." (Opp.'n Br. at 11-12.) But personal jurisdiction cannot be based on a nonresident defendant's contacts with a "nearby" forum. Cf. Hanson v. Denckla, 357 U.S. 235, 251 (1958) ("restrictions" on the exercise of personal jurisdiction "are a consequence of territorial limitations on the power of the respective states" and "a defendant may not be" haled into court in a forum "unless he has had the 'minimal contacts' with that State . . .") (emphasis added).

Since there is a Declaratory Judgment Action pending in the United States District Court for the Middle District of North Carolina that would resolve these matters, this Court should grant C Change's Motion to Dismiss for Lack of Personal Jurisdiction.

### III. Jurisdictional Discovery is Not Warranted Since MSI Has Not Made a Prima Facie Showing of Personal Jurisdiction or Raised Any Genuine Issues of Material Fact.

Jurisdictional discovery is warranted only when the plaintiff has established a prima facie showing of personal jurisdiction over the nonresident defendant and where there are issues of fact that could be resolved through such discovery. See, e.g., Kelly v. Syria Shell Petroleum Dev. B.V., 213 F.3d 841, 855 (5th Cir. 2000) ("'Discovery on matters of personal jurisdiction . . . need not be permitted unless the motion raises issues of fact.'"), cert. denied,

531 U.S. 979 (2000); Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 (7th Cir. 2000) ("At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted."), cert. denied, 532 U.S. 943 (2001).

As explained above, even if the Court assumes the truth of all factual allegations and construes all inferences in the light most favorable to MSI, MSI has still not made a prima facie case for exercising personal jurisdiction over C Change. Demonstrating an allegedly infringing product at a conference is not an infringing act within the scope of the Patent Act and it does not constitute a "purposefully directed" activity. MSI has made no attempt to distinguish the many cases cited by C Change on these issues or to question their validity. Instead, MSI relies on two cases—one that relied on defendant's one-on-one sales meeting with a specific client rather than participation in a trade show and one that has been called into question by more recent and contrary opinions from the same court as well as a subsequent amendment of the Patent Act. At the end of the day, it appears that the only reason this case was brought in this forum is for the convenience of Plaintiff's counsel. This is simply not enough.

Granting MSI jurisdictional discovery, especially the very broad discovery MSI has requested, will do nothing to change the law. It will only increase both parties' litigation expense, inconvenience the third party witnesses that MSI seeks to depose, and further burden this Court.

For example, MSI argues that it "should be entitled to further investigate C Change's actions relating to the 2006 AORN Meeting and the subsequent placements and sale of IntraTemp." (Opp'n Br. at 12-13.) Specifically, MSI seeks discovery as to the placement of

13

IntraTemp™ units in two hospitals in Georgia and Maryland in an effort to garner evidence that an "offer to sell" occurred during the conference. (Id. at 13.) But C Change has already submitted sufficient <u>uncontradicted</u> facts surrounding these events, indicating that there was no "offer to sell" made to anyone <u>at the conference</u>. See § 1.A, supra; (Kammer Decl. ¶¶ 15-17.) MSI has alleged no facts to the contrary, and jurisdictional discovery is not warranted when it is being sought as a "fishing expedition." See <u>Int'l Terminal Operating. Co., Inc. v. Skibs A/S Hidlefjord</u>, 63 F.R.D. 85, 87-88 (S.D.N.Y. 1973).

MSI also proposes to take discovery regarding "exactly how the C Change product was shown to potential customers . . . ." (Opp'n Br. at 13.) But MSI has already submitted evidence describing how C Change demonstrated the prototypes of the IntraTemp™ during the conference (Cordell Decl. ¶¶ 11-16), and C Change has submitted evidence that it did not negotiate sales, provide pricing information, or follow-up with any of the attendees following the conference (Kammer ¶¶ 10, 13). MSI has made no factual allegation to contradict this sworn evidence. Many courts have considered the issues of whether demonstrating an allegedly infringing product at a trade show constitutes an infringing "use" or "offer to sell" and have concluded that it does not. Accordingly, additional discovery on this issue is also unwarranted.

MSI has not met the minimal standard required for this Court to grant MSI's request for jurisdictional discovery. Thus, MSI's request should be denied.

## CONCLUSION

For the reasons stated herein, C Change respectfully requests that this Court deny MSI's request for jurisdictional discovery, grant C Change's Motion to Dismiss for Lack of Personal Jurisdiction and enter an order dismissing this action. C Change believes that this

14

US2000 9568070.3 57625-335718

Motion to Dismiss may be adequately considered based on the briefs and declarations and that oral argument is unnecessary.

This the 6th day of November 2006.

          /s/
Constance K. Robinson
D.C. Bar No. 244806
KILPATRICK STOCKTON LLP
607 14th Street, NW
Suite 900
Washington, DC  20005-2018
Telephone:  (202) 508-5822
Facsimile:  (202) 585-0002
Email:  crobinson@kilpatrickstockton.com

Steven Gardner  (*pro hac vice*)
N.C. State Bar No. 20984
Email: sgardner@kilpatrickstockton.com
Tonya R. Deem (*pro hac vice*)
N.C. State Bar No. 23075
Email:  tdeem@kilpatrickstockton.com
Jon R. Pierce (*pro hac vice*)
Texas State Bar No. 24046631
Email:  jpierce@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101-2400
Telephone:  (336) 607-7300
Facsimile:  (336) 607-7500

## **CERTIFICATE OF SERVICE**

This certifies that on this date the below attorney of record for Defendant C Change Surgical LLC electronically filed the foregoing REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> James H. Laughlin, Jr., Esq.
> Email:  jim.laughlin@hklaw.com
> John P. Moran, Esq.
> Email:  john.moran@hklaw.com
> Thomas S. Valente, Esq.
> Email:  tom.valente@hklaw.com
>
> HOLLAND & KNIGHT, LLP
> 2099 Pennsylvania Ave., N.W.
> Suite 100
> Washington, D.C.  20006

>            /s/
> Constance K. Robinson
> D.C. Bar No. 244806
> KILPATRICK STOCKTON LLP
> 607 14th Street, NW
> Suite 900
> Washington, DC  20005-2018
> Telephone:  (202) 508-5822
> Facsimile:  (202) 585-0002
> Email:  crobinson@kilpatrickstockton.com

US2000 9568070.3 57625-335718