UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
MEDICAL SOLUTIONS, INC.,                )
                                        )
         Plaintiff,                     )
                                        )
    v.                                  )   Civil Action No. 06-01261  (PLF)
                                        )
C CHANGE SURGICAL LLC,                  )
                                        )
         Defendant.                     )
_____)

MEMORANDUM OPINION

        This matter is before the Court on the motion to dismiss of defendant C Change Surgical LLC ("CCS") for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1]  Plaintiff Medical Solutions, Inc. ("MSI") requests an oral argument before the Court.  Upon consideration of the briefs, the Court finds oral argument to be unnecessary and grants defendant's motion to dismiss for lack of personal jurisdiction.  The Court denies plaintiff's request for jurisdictional discovery.

---

[1]  The papers that have been submitted in connection with this motion include: Defendant's Motion to Dismiss and a Memorandum of Points and Authorities in Support thereof ("Mot."); Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss ("Opp."); and a Reply Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction ("Reply").

        In this case, both parties have submitted declarations in support of their respective positions.  Plaintiff has submitted the declaration of Chad M. Cordell, former product demonstrator for O.R. Solutions, Inc., who attended the trade show.  See Declaration of Chad Cordell, Exh. 1 to Opp. ("Cordell Decl.") ¶¶ 2-4. Defendant has submitted the declaration of Patrick Kammer, President and Chief Executive Officer of defendant C Change Surgical, LLC.  See Declaration of Patrick Kammer, Exh. 1 to Mot., ("Kammer Decl.") ¶ 1.

I.  BACKGROUND

Plaintiff MSI alleges that defendant CCS is infringing upon two of its patents relating to one of its medical products.  See Mot. at 4 (citing Complaint ¶¶ 13-15).  CCS has moved to dismiss plaintiff's complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction.  See id.  Plaintiff asserts that personal jurisdiction exists because CCS "successfully used the District of Columbia for its commercial purposes" and committed a tort – patent infringement – while in the District.  Opp. at 6.  Alternatively, plaintiff requests jurisdictional discovery.  See Opp. at 12.

Plaintiff MSI is a medical development, manufacturing and distribution company that has developed technology for controlled heating and temperature maintenance of medical fluids and related equipment.  See Complaint ¶ 5.  MSI has obtained numerous patents to protect its technology.  Id.  Defendant CCS "is a . . . North Carolina limited liability company with its only place of business in Winston Salem, North Carolina."  Mot. at 3.  It manufactures and distributes or sells equipment for the control of heating of medical fluids and equipment.  See Complaint ¶ 6; Kammer Decl. ¶ 3.  According to plaintiff, defendant CCS had notice of MSI's patents and patent rights.  See Complaint ¶ 7.  Defendant states that it is not registered to do business in the District of Columbia; does not have agents, employees, bank accounts, telephone listings, or office space in the District; does not own or control anything of value in the District; and does not manufacture, use or sell any products in the District.  See Mot. at 4; Kammer Decl. ¶ 4.  In addition, CCS's website, while "accessible from the District of Columbia . . . does not include interactive features and is not specifically targeted to residents of the District."  Mot. at 4; Kammer Decl. ¶ 4.  In fact, defendant asserts that CCS has never directed any marketing efforts

at the District of Columbia, either generally or through sales calls or mass mailings, and has never generated revenue from the District.  See Kammer Decl. ¶ 5.

The only facts that plaintiff alleges for purposes of establishing personal jurisdiction stem from an industry trade show, the Association of periOperative Registered Nurses ("AORN") meeting, which was held in Washington, D.C. from March 19 to March 23, 2006.  See Mot. at 4; see also Kammer Decl. ¶ 8.  CCS attended this trade show, at which it was one of approximately six hundred exhibitors.  See Kammer Decl. ¶ 8.  Plaintiff asserts that, at the trade show, defendant used and offered to sell a product that allegedly infringes upon two of plaintiff's patents.  See Opp. at 9.  Plaintiff also alleges that CCS later sold the allegedly infringing product to hospitals as a direct result of its marketing at the trade show.  See id. at 5.  Plaintiff states: "[a]t AORN [m]eetings, exhibitors . . . have the opportunity to speak with potential customers, demonstrate their equipment, and create a marketing demand for their products."  Id. at 4.  Plaintiff concedes that "very few products are actually sold at an AORN [m]eeting," but asserts that the meeting "often results in subsequent sales to the attendees' hospitals and facilities."  Id.  At the 2006 AORN meeting, CCS had its own booth, which had a "large and visible" sign advertising the allegedly infringing product.  See id.  In addition, CCS representatives were working the booth and discussing the allegedly infringing product with potential customers.  See id.  Plaintiff alleges that CCS subsequently sold the allegedly infringing product to two hospitals – one in Maryland, the other in Georgia – that "learned of IntraTemp because C Change showed the infringing product at the Washington, D.C. event."  Id. at 5; see

Kammer Decl. ¶¶ 15, 16.[2]

Defendant responds that of the two hospitals plaintiff mentions, one hospital contacted CCS through its website two months *after* the trade show and the other hospital learned about CCS's product through second-hand information from a conference attendee. See Reply at 3; Kammer Decl. ¶¶ 15-16. Defendant does not dispute that it demonstrated and provided information to attendees regarding the allegedly infringing product. See Reply at 2. Defendant notes, however, that it did not make sales, negotiate sales or take orders at the meeting – it did not even provide price information to the attendees. See id. at 2-3. According to defendant, the negotiation for both the Maryland and Georgia sales took place in those respective states and in North Carolina, not in the District of Columbia. See Kammer Decl. ¶¶ 15, 16.

## II. DISCUSSION

### A. Standard of Review

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. In order to meet this burden, the plaintiff must allege specific facts on which personal jurisdiction can be based; the plaintiff

---

[2] Specifically with respect to the Maryland sale, plaintiff states only:

> Subsequently, C Change placed and sold IntraTemp to hospitals that learned of IntraTemp because C Change showed the infringing product at the Washington, D.C. event. According to the declaration submitted by C Change, someone who saw IntraTemp at the 2006 AORN Meeting told Patty McNeal of The Memorial Hospital of Easton, Maryland, about IntraTemp, and the IntraTemp product was subsequently sold to this hospital.

Opp. at 5; see Kammer Decl. ¶ 15.

cannot rely on conclusory allegations.  See GTE New Media Services, Inc. v. Ameritech Corp., 21 F. Supp. 2d 27, 36 (D.D.C. 1998), remanded on other grounds sub nom GTE New Media Services, Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C. Cir. 2000).  When considering personal jurisdiction, the Court need not treat all of the plaintiff's allegations as true.  Instead, the court "may [also] receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts."  Jung v. Assoc. of Amer. Medical Colleges, 300 F. Supp. 2d 119, 127 (D.D.C. 2004) (quoting United States v. Philip Morris Inc., 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000)); see also Brunson v. Kalil & Co., 404 F. Supp. 2d 221, 223 (D.D.C. 2005).

"The determination whether a district court has personal jurisdiction over the defendant[] in a patent infringement case generally involves two inquiries.  First, does jurisdiction exist under the state long-arm statute?"  Trintec Indus., Inc. v. Pedre Promotional Prod., Inc., 395 F.3d 1275, 1283 (Fed . Cir. 2005).  Second, if personal jurisdiction exists under a jurisdiction's long-arm statute, would the exercise of such jurisdiction by the Court "be consistent with the limitations of the due process clause?"  Id.; see also Dainippon Screen Mfg. Co. v. CFMT, Inc., 142 F.3d 1266, 1270 (Fed. Cir. 1998).

B. *Specific Jurisdiction Under the Long-Arm Statute*

Plaintiff  argues that the District of Columbia long-arm statute, D.C. Code § 13-423(a), gives the Court jurisdiction over this matter because it "allow[s] for personal jurisdiction in the case of tortious injury in the District of Columbia." Opp. at 6.[3]  Section

---

[3] Plaintiff does not argue that defendant has systematic contacts with the District of Columbia such that there is general jurisdiction over the defendant here under D.C. Code § 13-334(a).  See Opp. at 6.

13-423(a)(3) of the District of Columbia code provides that "[a] District of Columbia court may exercise personal jurisdiction over a person . . . as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an act or omission in the District of Columbia[.]" D.C. Code § 13-423(a)(3).  The tort plaintiff alleges is patent infringement, which occurs when one "without authority makes, uses, offers to sell, or sells any patented invention . . ." 35 U.S.C. § 271(a); see Opp. at 6.  Plaintiff argues that CCS both "used" and "offered to sell" the allegedly infringing product, each course of conduct constituting the tort of patent infringement, which would give rise to personal jurisdiction over defendant under D.C. Code § 13-423(a)(3).  See Opp. at 6.

1.  Infringing "Use" Under 35 U.S.C. § 271(a)

Plaintiff cites only one published decision in support of its argument that CCS "used" a patented invention by displaying it at the 2006 AORN meeting.  Citing to Donnelly Corp. v. Reitter & Schefenacker GmbH, 189 F. Supp. 2d 696, 704 (W.D. Mich. 2002), plaintiff states that "[p]lacing products on display during a meeting with a potential customer with the purpose of generating interest in a potentially infringing product has been held to be using the accused products in that forum."  Opp. at 6.  As defendant argues, however, and the Court agrees, Donnelly is very different from the instant case in that it dealt with "a sales meeting with a specific, individual customer, DaimlerChrysler," which is "markedly different from displaying and demonstrating a product during a national conference with over 600 exhibitors and nearly 7,000 attendees."  Reply at 7-8.  It was the one-on-one meeting with DaimlerChrysler that constituted the infringing "use" in Donnelly.  See Donnelly Corp. v. Reitter & Schefenacker

6

GmbH & Co., 189 F. Supp. 2d at 704 ("The evidence before the Court shows that the mirrors were on display during at least one meeting in Michigan by Defendant . . . with a potential customer . . . As such, Plaintiff Donnelly has met its burden that Defendant R&S GmbH 'used' the accused product in Michigan."); see also Reply at 8.  That is quite different from the present case, where the item was displayed to a large number of people at a large trade show.

    Plaintiff points to only one other decision, which is no longer relevant, in its effort to persuade the Court that CCS has "used" the allegedly infringing product in the District of Columbia merely by displaying it at a trade show.[4]  Defendant, however, cites several cases holding that such display is *not* an infringing "use."  See Mot. at 18 (citing Fluid Mgmt. Ltd. P'ship v. H.E.R.O. Indus., Ltd., No. 95C5604, 1997 WL 112839 at *4 (N.D. Ill. Mar. 11, 1997) (holding that the display of the alleged infringing product at a trade show did not constitute an infringing "use"); Intermedics, Inc. v. Ventritex, Inc., 775 F. Supp. 1269, 1286 (N.D. Cal. 1991) (holding that the "mere demonstration or display of an accused product, even in an obviously commercial atmosphere, does not constitute an infringing use under § 271(a)"), aff'd 991 F.2d 808 (Fed. Cir. 1993); Brennan v. Mr. Hanger, Inc., 479 F. Supp. 1215, 1231 (S.D.N.Y. 1979) (holding that the display of the alleged infringing product did not constitute an infringing "use");

---

[4] Plaintiff cites to an unpublished 1987 opinion from the Northern District of Illinois, Chen v. Regitar Power Tools, Co., No. 86C6425, 1987 WL 14734 (N.D. Ill. June 20, 1987), in support of the proposition that displaying and distributing brochures regarding an allegedly infringing product constitutes infringing "use" under the applicable statute.  See Opp. at 6-7.  As defendant aptly notes, however, this decision predates the 1996 amendment to the Patent Act.  See Reply at 8 (citing Fluid Mgmt. Ltd. v. H.E.R.O. Indus., No. 95C5604, 1997 WL 112839 (N.D. Ill. Mar. 11, 1997) and CHISUM ON PATENTS); 5 DONALD S. CHISUM, CHISUM ON PATENTS § 1602[4][b] (2005) ("Whether sales demonstrations or displays are 'uses' became unimportant after an amendment to Sections 154 and 271 . . . added 'offer to sell' as a distinct infringing act.").

see also Van Well Nursery, Inc. v. Mony Life Ins. Co., 362 F. Supp. 2d 1223, 1228 (E.D. Wash. 2005) (noting that demonstrating a device or "displaying . . . a patented item for advertising may not technically constitute a 'use'")).  The Court agrees.  Plaintiff therefore has failed to make a *prima facie* showing of personal jurisdiction through its "use" argument.

2. "Offer to Sell" Under 35 U.S.C. § 271(a)

Plaintiff's second argument is that CCS's conduct at the trade show in the District of Columbia constituted an "offer to sell" an allegedly infringing product.  Plaintiff argues that CCS attended the meeting "to show the infringing . . . product and create customer interest in that product."  Opp. at 8.  In support of this proposition, plaintiff notes that approximately one hundred clinical professionals left their contact information for CCS and that CCS's booth made its product more visible to potential customers.  See id. at 9.

As defendant notes, the Federal Circuit "define[s] § 271(a)'s 'offer to sell' liability according to the norms of traditional contractual analysis."  Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1254-55 (Fed. Cir. 2000); see Reply at 4.  According to the Federal Circuit, an "offer to sell" in the patent context is shown by a "'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'"  Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d at 1257 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 24 (1979)).  To constitute an "offer to sell" under traditional contract principles, such an offer requires price terms.  See MEMC Elec. Material, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1376 (Fed. Cir. 2005) (citing Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d at 1251) ("[T]he e-mails,

while containing a description of the allegedly infringing wafers, do not contain any price terms. Accordingly, on their face, the e-mails cannot be construed as an ''offer'' which Samsung Austin could make into a binding contract by simple acceptance.").  Because the price for CCS's allegedly infringing product was not made available to attendees at the AORN meeting, see Kammer Decl. ¶ 10, there could not have been an offer to sell its product for the purposes of 35 U.S.C. § 271(a).  See MEMC Elec. Material, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d at 1376; see also HollyanneCorp. v. TFT, Inc., 199 F.3d 1304, 1308-09 (Fed. Cir. 1999) ("[T]here had been an 'offer to sell' where the defendant manufacturer had communicated to prospective buyers both a description of the product and 'a price at which it can be purchased.'").  Plaintiff therefore has failed to make a *prima facie* showing of personal jurisdiction through its "offer to sell" argument.  Accordingly, plaintiff has failed to make a *prima facie* showing of personal jurisdiction over defendant in this Court, because there is no showing of a tort having been committed in the District of Columbia.[5]

### C.  Jurisdictional Discovery

The scope of discovery, including that relating to jurisdictional facts, "lies within the district court's discretion."  Mwani v. Bin Laden, 417 F.3d 1, 17 (D.C. Cir. 2005).  Plaintiff requests the Court to allow it to take jurisdictional discovery if it concludes that the allegations pertaining to personal jurisdiction are insufficient.  See Opp. at 12.  The D.C. Circuit has stated that "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified."  GTE New Media Services, Inc. v.

---

[5]     The Court therefore does not need to consider whether exercising personal jurisdiction over CCS would comport with the requirements of due process.

BellSouth Corp., 199 F.3d 1343, 1350 (D.C. Cir. 2000).  When requesting jurisdictional discovery, however, a plaintiff must make a "detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce."  United States v. Philip Morris Inc., 116 F. Supp. 2d at 130, n.16.  Where there is no showing of how jurisdictional discovery would help plaintiff discover anything new, "it [is] inappropriate to subject [defendants] to the burden and expense of discovery."  Comsat Corp. v. Finshipyards S.A.M., 900 F. Supp. 515, 524, n.4 (D.D.C. 1995).

        The Court denies plaintiff's request for jurisdictional discovery.  Jurisdictional discovery "is appropriate when the existing record is 'inadequate' to support personal jurisdiction and *a party demonstrates that it can supplement its jurisdictional allegations through discovery*."  Trintec Indus., Inc. v. Pedre Promotional Prod., Inc., 395 F.3d at 1283 (quoting GTE New Media Servs. v. BellSouth Corp., 199 F.3d at 1351-52) (emphasis added).  Plaintiff has failed to show that additional discovery would be beneficial to its establishment of personal jurisdiction.  Accordingly, the motion to dismiss of defendant C Change Surgical LLC is granted, and the request of plaintiff Medical Solutions, Inc. for jurisdictional discovery is denied.

        An Order consistent with this Opinion shall issue this same day.

        \_\_\_\_/s/_____
        PAUL L. FRIEDMAN
        United States District Judge

DATE:  December 29, 2006